Jones, J.
 

 In the course of the opinion, the Ohio Central Railroad Company will be alluded to as the “railroad company,” which was the initial company
 
 *564
 
 that was party to the original agreement. Said village of Bucyrus has since become, and is now, a city.
 

 We do not think it necessary to allude to the proceedings under which the railroad company’s title and possession of the premises later came into the hands of the plaintiff in error, for the reason that the village, now the city, of Bucyrus, was not a party to such proceedings and was in no wise bound thereby. The city of Bucyrus relies upon the covenants contained in the agreement and deed of the railroad company, its initial obligee, made on behalf of itself and its successors and assigns.
 

 The city prayed for and obtained relief from the Court of Appeals in two respects: (a) A mandatory injunction requiring the plaintiff in error, until' the further order of the court, to fully man, operate, use and maintain the shops, machinery and its equipment in Bucyrus as its sole construction and principal repair shops; to keep them in good repair, and also enjoining the plaintiff in error from ceasing operation at Bucyrus and directing its work to be done at Collin-wood, Ohio, or elsewhere ; and (b)- the court enjoined the plaintiff in error from removing from the premises any of the buildings, tracks, machinery or equipment thereon. While a mandatory injunction was prayed for and granted by the Court of Appeals the action is in fact one seeking specific performance of the covenants embodied in the agreement and deed of December 27,1881. Did the Court of Appeals fall into error in decreeing that plaintiff in error, until its
 
 further order,
 
 should fully man, operate and maintain its shops and equipment at Bucyrus as its sole construction and principal repair shops?
 

 The chief contention of the defendant in error, given as a reason for its employment of the injunctive remedy, is that the injury to the city is irreparable and that under the circumstances injunction is the only adequate remedy. In its petition the city alleges that
 
 *565
 
 the inducements offered by the railroad company led the city into its engagement; that these inducements included, among others, new channels of trade and future employment for its citizens; it is claimed that, by reason of its added growth and development caused by the installation of the shops, and because of the large number of additional employees that were thus engaged, the city was compelled to make extensive improvements in constructing its streets, its sewer and water systems, and in the erection of schoolhouses for the housing of the large number of children of the employees and other citizens, necessitated by the increased population arising from the installation of the shops. It is also alleged that, because of such agreement and deed the citizens of the municipality expended large amounts of money in the erection of private buildings for occupancy by the employees of the shops, and by others; and that in the building of public improvements and in the improvement of private property the citizens have expended an amount which cannot be accurately ascertained, but which is believed to be in excess of two million dollars. And it is alleged in its petition that the closing of the shops, and the diversion of their construction and repair work from Bucyrus, will cause the city irreparable damage for which it and its citizens have no adequate remedy at law.
 

 Where it was sought to compel railroad companies to perform private contracts affecting their public functions, and especially where the company’s obligations are permanent in character, specific performance of such contracts has been denied. And it has been sometimes intimated that the parties seeking such relief are relegated to an action at law. Of the many eases cited upon this question, the case of
 
 Texas & Pacific Ry. Co.
 
 v.
 
 Marshall,
 
 136 U. S., 393, 10 S. Ct., 846, 34 L. Ed., 385, is the most directly in point. In the
 
 Marshall case,
 
 the city of Marshall had agreed to give the railway company 66 acres of land and $300,000 in
 
 *566
 
 county bonds, for which the railway company agreed to permanently establish its eastern terminus at the city of Marshall, and to establish and construct at said city the main machine shops and car works of said railway company. The city performed its agreement. The railway company built its shops, some of which were later removed. The city filed its bill in equity to enforce the agreement. The United States Supreme Court held that, if the contract were to be interpreted as one to favor maintenance of its depot at Marshall, without regard to the convenience of the public, it would become a contract that could not be enforced in equity; and that, if there was a breach, the remedy lay in an action at law. In the course of his opinion, Mr. Justice Miller said, at page 405: “We have already shown that to decree the specific enforcement of this contract is to impose upon the company an obligation, without limit of time, to keep its principal office of business at the city of Marshall, to keep its main machiiie shops there, and its car works there, and its other principal offices there, although the exigencies of railroad business in the State of Texas may imperatively demand that these establishments, or some of them, should be removed to places other than the city of Marshall, and that this would be also required by the convenience of the public, in which case both the public convenience and the best interests of the railroad company would be sacrificed by a contract which is perpetual, that all of its business offices and business shall forever remain at Marshall.” See, also,
 
 Holladay
 
 v.
 
 Patterson,
 
 5 Or., 177.
 

 A Mr. Emery, assistant vice president of the plaintiff in error, and former general manager of the Ohio Central, testified that the removal of the shops from Bucyrus would bring about the approximate saving “of about $260,000 a year on the initial payroll and overhead” expenses. If the operation of these shops should cause heavy loss of revenue, the public is in
 
 *567
 
 directly affected, since that factor enters into the cost of public transportation where the rates are controlled by public commissions.
 

 The order of the Court of Appeals in the instant case compelled performance of the contract; and it decreed that,
 
 “until further order of the court,”
 
 the railroad company should “fully man” and operate at Bucyrus its shops, machinery and other equipment as its sole construction and principal repair shops. The court, by its entry, reserved jurisdiction to compel compliance in the future. This is in effect a retention of control by a court of equity of the operation of the railroad and its facilities, an equitable power which is not justified except as a temporary measure during the pendency of litigation or for the preservation of property. The case must be one of extreme stringency where circumstances would otherwise permit a court of equity to control the operation of a railroad.
 
 Port Clinton Rd. Co.
 
 v.
 
 Cleveland & Toledo Rd. Co.,
 
 13 Ohio St., 544, 555. Furthermore the court’s entry requires the railroad to “fully man” and operate the shops and appurtenances. It connotes reserved power in the court to exercise, in that respect, its own judgment in carrying on operations, and thereby impinges on the powers and duties of the company’s executives; and connotes power to determine, in the future, whether or not they are fully manned. Upon that feature, in the
 
 Marshall case, supra,
 
 the federal judge delivering the opinion said, at page 406: “The enforcement of the contract by a decree of the court requiring the company to restore in all its fulness the offices, the workshops, and whatever has been removed from the city of Marshall, and the continued and perpetual compliance with all those conditions by the company, to be enforced in the future under the eye of a court of chancery, against the public interest, and, perhaps, manifestly to the prejudice and injury of the railroad company, exercising to some extent the public function authorized
 
 *568
 
 by tbe acts of Congress or of tbe legislature of Texas, present difficulties far more formidable than the action at law.”
 

 The same principle was announced in the case of
 
 Beasley
 
 v.
 
 Texas & Pacific Ry. Co.,
 
 191 U. S., 492, 24 S. Ct., 164, 48 L. Ed., 274, where, in speaking of the railroad’s agreement with an individual not to build or establish a depot within three miles of a stipulated place, Mr. Justice Holmes said: “To compel the specific performance of contracts still is the exception, not the rule, and courts would be slow to compel it in cases where it appears that paramount interests will or even may be interfered with by their action. It has been intimated by this court that a covenant much like the present should not be enforced in equity, and that the railroad should be left at liberty to follow the course which its best interests and those of the public demand.” See also
 
 Blanchard
 
 v.
 
 Detroit, Lansing & Lake Michigan Rd. Co.,
 
 31 Mich., 43, 18 Am. Rep., 142.
 

 The covenant of reversion of the premises contained in the deed of 1881 was a condition subsequent, which the parties had a legal right to impose. When the deed of conveyance was made by the village to the railroad company the former could have provided, had it chosen, for liquidated damages in money. However at that time, since such future damages would be entirely speculative and unascertainable with any degree of certainty, that fact no doubt caused the insertion of the reversion clause in the deed, which provided for the character of relief and reparation to which the city was entitled in case the railroad company breached its covenant by failing to perpetually use, maintain and operate the shops as its sole construction and principal repair shops for its line of road in Ohio. It is expressly stipulated in the deed of the village that forfeiture of the premises should be the remedy pursued in case of the breach of that covenant by the railroad company, or by its successors and assigns. This fur
 
 *569
 
 nish.es an additional reason why the city would not be entitled to injunctive remedy, but would be relegated to the remedy provided in its deed of 1881. In the foregoing cited case's it appears that the parties had not agreed, as in this case, to a covenant providing for a forfeiture or re-entry in case of breach of covenant by the grantee railroad company. In the case at bar an express covenant was provided in the deed, which contained a proviso that if the railroad company or its successors and assigns should fail to fully man and operate its shops, buildings, machinery and equipment for its line of railroad in Ohio, “then the said tracts of land together with said shops, buildings, roundhouse, machinery, equipments and tracks thereon should revert to and vest in and become absolutely the property of the said village of Bucyrus.” That was part of the consideration which the village of Bucyrus was to receive in case of default. Where the parties, in their contract, have agreed upon a stipulation and definite remedy to be employed by the grantor, in case of breach of a subsequent covenant by the grantee, the grantor ordinarily will be relegated to the relief thus stipulated in his contract. This is the rule applied by courts generally; and it is applied to cases in ejectment, in the cancellation of leases between landlord and tenant, and in cases for forfeiture or re-entry under a statute or at common law. “The parties to a lease for a term of years may, however, lawfully provide fo:r its forfeiture for the breach of the lessee’s covenants, or the conditions contained therein, and while the courts are said to abhor forfeitures they will not hesitate to give effect to such provisions when clearly provided for by the parties.” 16 .Ruling Case Law, 1115.
 

 Where no provision for forfeiture is expressed in the instrument, there may be an exception to the rule, as indicated in
 
 City of Cleveland
 
 v.
 
 Herron,
 
 102 Ohio St., 218, 131 N. E., 489, where the syllabus reads:
 

 
 *570
 
 “Failure of the grantee to perform a promise which formed the whole or part of the consideration for the execution of a conveyance gives rise to no right of rescission in the grantor, where such failure was not expressly made a ground of forfeiture.” And in the course of the opinion, at page 224, it was said: “So equity will not interfere ordinarily where a grantor has seen fit to accept a promise on the part of his grantee for the performance of certain acts, without specifically providing that failure to perform shall be a condition of forfeiture, or in some way affect the validity of the deed, or entitle him to a reconveyance.”
 
 Coe
 
 v.
 
 Columbus, Piq. & I. Rd. Co.,
 
 10 Ohio St., 372, 75 Am. Dec., 518;
 
 Maginnis
 
 v.
 
 Knickerbocker Ice Co.,
 
 112 Wis., 385, 88 N. W., 300, also reported in 69 L. R. A., 833, and annotations at page 856, etc.;
 
 Rutland Marble Co.
 
 v.
 
 Ripley,
 
 77 U. S. (10 Wall.), 339, 19 L. Ed., 955;
 
 Wheeler
 
 v.
 
 Earle,
 
 59 Mass. (5 Cush.), 31, 51 Am. Dec., 41.
 

 The deed of 1881 was placed upon record, and, under our statutes, subsequent purchasers are held to have had constructive notice of the deed and its contents. Acceptance and taking possession by the grantee bound the latter to the performance of covenants therein contained.
 
 Hickey
 
 v.
 
 Ry. Co.,
 
 51 Ohio St., 40, 36 N. E., 672, 23 L. R. A., 396, 46 Am. St. Rep., 545;
 
 Sanitary Dist. of Chicago
 
 v.
 
 Chicago Title & Trust Co.,
 
 278 Ill., 529, 116 N. E., 161. As heretofore stated, the village was no party to any proceeding whereby this plaintiff in error claims to have succeeded to the title of the premises involved in this action. We are therefore of the opinion that, under the deed of December 27, 1881, the city was not entitled to the mandatory injunction granted by the Court of Appeals; and, if the railroad company has failed to carry out the covenants and conditions contained in its deed from the village of Bucyrus the city would, in equity, be entitled to sue for forfeiture of the premises, including the shops
 
 *571
 
 and equipment thereon, and to equitable relief, in the meantime enjoining the plaintiff in error from removing its shops, machinery and equipment from the premises.
 

 A majority of the Court of Appeals express the opinion that the direct object of the contract involved the occupancy of land of the village for railroad purposes, under Section 3283, Revised Statutes, as it existed when the contract was made, and that the contract was therefore not unlawful; they also hold that 1he payment of $50,000 by the village, although contrary to law, was merely incidental to the main object to be accomplished. The minority member of the Court of Appeals was of the opinion that the agreement and deed plainly show that they were not executed solely for use and occupation conformably to Section 3283, but for the purpose of procuring the location and operation of the shops in violation of constitutional provisions. Section 3283, Revised Statutes, provided that the village might “agree upon the manner, terms, and conditions upon which” public places might be occupied. We have no doubt that the proceedings of the village and its donation of land and money were made solely to aid the railroad company, and were made principally to secure the location and operation of the railroad’s shops at Bucyrus.
 

 The Act of April 9, 1880, was a special act, and its operation and application are entirely local. It is unconstitutional, being in contravention of Article II, Section 26, of the state Constitution; it does not have uniform operation throughout the state.
 
 Hixson
 
 v.
 
 Burson,
 
 54 Ohio St., 470, 43 N. E., 1000;
 
 Platt
 
 v.
 
 Craig,
 
 66 Ohio St., 75, 63 N. E., 594. By its terms it applies only to villages which by the federal census of 1870 had, or by any subsequent federal census, might have, a population of 3,066. While acts applying to the classification of cities, whereby a city may obtain a future status under such classification, have been held
 
 *572
 
 constitutional, the special act in this case does not apply to that situation, and could not apply to but a single village having a population of 3,066, and that was the village of Bucyrus. Paraphrasing the language employed by the learned judge in
 
 Platt
 
 v.
 
 Craig, supra,
 
 this court is not informed that there is any village.in Ohio, other than Bucyrus, that has ever had, or is likely to have, under a subsequent federal census, the exact population of 3,066.
 

 There is another cogent reason why the legislative act of 1880 is constitutionally invalid. Article VIII, Section 6, of the Ohio Constitution, provides that the General Assembly shall never authorize any town “to raise money for, or loan its credit to, or in aid of,” any corporation or association. The donation of land and $50,000 in bonds was plainly an act on the part of the village of Bucyrus to raise money for the railroad company as an inducement for its location of its shops in Bucyrus; and in that respect the act and proceedings thereunder contravene the provisions of the foregoing section of our Constitution.
 
 Markley
 
 v.
 
 Village of Mineral City,
 
 58 Ohio St., 430, 51 N. E., 28, 65 Am. St. Rep., 776;
 
 Cole
 
 v.
 
 La Grange,
 
 113 U. S., 1, 5 S. Ct., 416, 28 L. Ed., 896.
 

 It is the contention of counsel for plaintiff in error that, the legislative act being void, the parties’ agreement of 1880, and the deed of 1881, executed pursuant thereto, are also void, and that therefore the city can have no relief in equity based upon such void instruments. The rationale of the plaintiff in error’s argument amounts to this: It is true we have your land and $50,000, but you had no constitutional authority to donate them;
 
 ergo,
 
 your agreements áre void,
 
 ah initio,
 
 and you can obtain no relief. Conceding such constitutional invalidity, it by no means follows that under the circumstances disclosed by the record the city can obtain no relief from the other
 
 particeps
 
 to the illegal transaction. Were the contract and deed purely
 
 *573
 
 executory, the legal contention advanced by counsel for plaintiff in error might well be urged; but where, as in this case, they have been fully consummated and adhered to continuously for a period of some fifty years, during which period both parties have mutually profited as a result of their several agreements, a different question is presented. It is a homely adage— one which is'very pertinent here — that “one cannot have his cake and eat it;” and especially is this maxim true where one party appeals to a court of equity for a one-sided relief against the other, from an invalid contract, while still retaining in his own hands the fruits of that contract. This is a just and equitable rule, one that appeals to the conscience of the chancellor and is generally recognized by the courts. ‘ ‘ Thus a person who has participated in proceedings under a statute, or who has acted under the statute and in pursuance of the authority conferred by it, or who has claimed the benefit of the statute to the detriment of others, or who asserts rights under it, may not question its constitutionality.” 12 Corpus Juris, 769;
 
 State, ex rel. Clemmer & Johnson Co.,
 
 v.
 
 Turner, Atty. Genl.,
 
 93 Ohio St., 379, 113 N. E., 327. In that case the state of Ohio entered into a contract to build an armory in a city, the site thereof to be provided by the city and $50,000 in money to be contributed by its citizens for the construction of the armory; the city executed and delivered its deed to the state, and the citizens paid the sum of $50,000 to be expended in the cost of construction of the armory building. The syllabus held that in such a situation “the state is estopped to question the constitutionality of the law authorizing the city to make such conveyance.” We shall allude to but a few of the large number of cases cited in various text-books supporting that principle:
 
 William Deering & Co.
 
 v.
 
 Peterson,
 
 75 Minn., 118, 77 N. W., 568;
 
 City of St. Louis
 
 v.
 
 St. Louis, Iron Mountain & Southern Ry. Co.,
 
 248 Mo., 10, 154 S. W., 55;
 
 Vickery
 
 v.
 
 Bd. of
 
 
 *574
 

 Commrs. of Hendricks County,
 
 134 Ind., 554, 32 N. E., 880. In the course of the opinion in
 
 Vickery
 
 v.
 
 Board of Commrs. of Hendricks County,
 
 it is said: “He had received all the benefits contemplated by the law, and now seeks to avoid payment for such benefits, and asks the aid of a court of equity for that purpose. One who receives a benefit under an unconstitutional law is estopped from denying its constitutionality,” — citing cases. Other cases to the same effect are
 
 Gano
 
 v.
 
 Minneapolis & St. Louis Rd. Co.,
 
 114 Iowa, 713, 87 N. W., 714, 55 L. R. A., 263, 89 Am. St. Rep., 393;
 
 Illinois Central Rd. Co.
 
 v.
 
 King,
 
 69 Miss., 852, 13 So., 824;
 
 Board of Education of City of Millville
 
 v.
 
 Empire State Surety Co.,
 
 83 New Jersey Law, 293, 85 A., 223;
 
 Ferguson
 
 v.
 
 Landrum,
 
 5 Bush (Ky.), 230, 96 Am. Dec., 350;
 
 City of Helena
 
 v.
 
 Turner,
 
 36 Ark., 577.
 

 There is no claim made in the city’s petition, nor is it found in the Court of Appeals’ findings, that the plaintiff in error threatened to remove the physical property consisting of its shops, machinery, tracks and equipment from Bucyrus to Collinwood. The complaint made by the plaintiff below, and the finding by the court, is that the plaintiff in error will cease to man and operate the premises and buildings as and for the sole construction and principal repair shops of its line and will divert the work it has carried on at Bucyrus to the shops at Collinwood, Ohio. The Court of Appeals, however, entered a decree enjoining the plaintiff in error from removing any of the buildings, tracks, machinery or equipment upon the premises; and had such threatened action appeared in this record we would feel inclined to affirm that part of the decree. But since it does not appear that plaintiff in error threatens to remove the shops, etc., from the premises, we are constrained to reverse the judgments of the
 
 *575
 
 lower courts without prejudice to the city’s right to act in case of such threatened removal.
 

 Judgment reversed.
 

 Day, Allen, Stephenson and Matthias, JJ., concur.
 

 Weygandt, C. J., dissents.
 

 Kinkade, J., not participating.