THE STATE, EX REL. DAYTON FRATERNAL ORDER OF POLICE LODGE NO. 44, *v.* STATE EMPLOYMENT RELATIONS BOARD ET AL.

[Cite as State, ex rel. Dayton Fraternal Order of Police Lodge No. 44, *v.* State Emp. Relations Bd. (1986), 22 Ohio St. 3d 1.]

(No. 85-314—Decided January 16, 1986.)

*Jaffy, Livorno, Kaufmann & Arnett Co., L.P.A., Stewart R. Jaffy* and *Henry A. Arnett,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Loren L. Braverman,* for respondent SERB.

*J. Anthony Sawyer,* acting law director, *Pickrel, Schaeffer & Ebeling, Richard J. Holzer, Andrew C. Storar* and *Janet K. Cooper,* for respondent city of Dayton.

DOUGLAS, J.

I

With the enactment of the Public Employees Collective Bargaining Act, Ohio adopted a comprehensive law to govern labor relations between public employees and their employers. This legislation was long overdue. The Act replaced the outmoded, unworkable and unfair Ferguson Act. By the time the new Act went into effect, Ohio was the fortieth state to have enacted some form of legislation to regulate their public-sector labor relations.[3]

---

[3] By the time Ohio enacted the Public Employees Collective Bargaining Act, only ten states were without some form of legislation authorizing collective bargaining in the public sector. They were: Arizona, Arkansas, Colorado, Louisiana, Mississippi, North Carolina, South Carolina, Utah, Virginia and West Virginia. Note, S. 133: Ohio's Public-Sector Collective-Bargaining Framework (1984), 9 U. Dayton L. Rev. 583, 584, fn. 8.

Until the Act went into effect, Ohio had no legal framework governing public-sector labor relations, and dealt with these issues on an *ad hoc* basis. Student Project: Public Sector Collective Bargaining in Ohio: Before and After Senate Bill No. 133 (1983), 17 Akron L. Rev. 229. This produced an abundance of litigation and controversy and, in fact, there were four hundred twenty-eight public employee work stoppages in Ohio between the years 1973 and 1980.[4] There were no guiding principles which public employers and employees could review in order to structure their conduct in dealing with terms and conditions of employment. Thus, the pre-Act system, if it can be called a system, was an ineffective and costly way to manage public-sector labor relations.

The new Act is a positive step forward. It sets forth firmly defined legal guidelines that minimize the possibility of public-sector labor disputes and provides for the orderly resolution of any disputes that occur. This law brings stability and clarity to an area where there had been none and will facilitate the determination of the rights and obligations of government employees and employers, and give them more time to provide safety, education, sanitation, and other important services. In addition, the Act assures that both public employers and employees will be accorded many of the same rights and be governed by many of the same responsibilities as employees and employers in the non-public sector. In now being treated relatively equally with employees in the private-sector, public employees have been removed from second-class citizenship.

## II

Recognizing the foregoing purposes, the issue in this case is whether the "Dayton Amendment," R.C. 4117.01(F)(2), meets those purposes and whether the provision in question violates any of the guarantees of the Constitution of the state of Ohio or the Constitution of the United States.

Section 26, Article II of the Ohio Constitution provides, in part, that "[a]ll laws, of a general nature, shall have a uniform operation throughout the state * * *." This court noted in *Brown* v. *State, ex rel. Merland* (1929), 120 Ohio St. 297, at 304, that "* * * '[i]f the subject does or may exist in, and affect the people of every county, in the state, it is of a general nature.' " It is clear that the Public Employees Collective Bargaining Act is a law of statewide concern since it affects persons in every county of the state.

The question then becomes whether the Act, and specifically the second sentence of R.C. 4117.01(F)(2), has uniform operation throughout the state. As we have seen, the provision does not affect any employees in the state except those specific policemen and fire fighters in the city of Dayton who have previously been determined to be "supervisors." In its clearest sense, the provision involved bears every evidence of special legislation affecting, to their detriment, only one group of employees while granting to

---

[4] 9 U. Dayton L. Rev. 583, *supra*, at 595, and Note, Collective Bargaining, Impasse Resolution & Strikes in the Public Sector (1981), 16 New Eng. L. Rev. 505, 540.

all other employees in the state, likely situated, the full protection and rights afforded by the Act. Cf. *Andrews* v. *State, ex rel. Henry* (1922), 104 Ohio St. 384. Thus, we find that the provision in question does not have a uniform operation throughout the state.

Section 2, Article I of the Ohio Constitution provides that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." This provision is the functional equivalent of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6, 8 [15 O.O.3d 3]. That provision provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

Generally speaking, these provisions do not restrict the government's ability to classify persons, so long as the classifications that are created are rationally related to a legitimate government interest. *Kinney* v. *Kaiser Aluminum & Chemical Corp.* (1975), 41 Ohio St. 2d 120, 123 [70 O.O.2d 206]. To avoid violating the above-quoted Equal Protection Clauses, a classification made by state legislation "* * * 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' * * *" *Allied Stores of Ohio, Inc.* v. *Bowers* (1959), 358 U.S. 522, 527. The question thus becomes whether the legislature's decision to exempt, in effect, Dayton Police Department sergeants, lieutenants and captains[5] from the collective bargaining rights, granted to all other similarly situated police personnel in Ohio, bears a fair and substantial relation to the object of the Public Employees Collective Bargaining Act.

We hold that it does not bear any such relation. The purpose of the "Dayton Amendment" is to deny certain Dayton municipal employees the collective bargaining rights enjoyed by all other similarly situated municipal employees in Ohio. If there is a reason for exempting Dayton employees from the rights enjoyed by all others, then that reason is not contained in the record of this case. Frankly, this classification makes no sense and this is especially so when one considers that the "Dayton Amendment," which takes away from these employees the rights and protections of the Act, does not, as a corollary, relieve these employees from the obligations and proscriptions found in R.C. 4117.15. The purpose of the Act is to minimize public-sector labor conflict and to provide a mechanism for resolving disputes when they arise. The second sentence of R.C. 4117.01(F)(2) does not accomplish this purpose.

In sum, the "Dayton Amendment" classification appears to be without any legitimacy and is the very kind of arbitrary legislative enactment that

---

[5] The parties have stipulated that:

"Within the organizational structure of the City of Dayton Police Department, there is no job classification denominated as 'captain,' nor does any member of said Department hold a rank denominated as 'captain.' "

is prohibited by the equal protection guarantees of both the Ohio and United States Constitutions.

### III

In addition to arguing that the second sentence of R.C. 4117.01(F)(2) does not violate Section 26, Article II and Section 2, Article I of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution, respondent city of Dayton contends that mandamus is not an appropriate remedy to be pursued by relator because it has an adequate remedy at law. Respondent Dayton also argues that what relator really seeks is a declaratory judgment as to the constitutionality of a statute. We reject both of these contentions.

Respondent relies upon R.C. 2506.01 which provides, in pertinent part, that:

"Every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department or other division *of any political subdivision of the state* may be reviewed by the common pleas court of the county in which the principal office of the political subdivision is located, as provided in sections 2505.01 to 2505.45, inclusive, of the Revised Code, and as such procedure is modified by sections 2506.01 to 2506.04, inclusive, of the Revised Code." (Emphasis added.)

This section, by its own terms, applies only to decisions made by some authority of a "political subdivision" of the state. This does not include the state itself or any of the state agencies. *Fair* v. *School Employees Retirement System* (1975), 44 Ohio App. 2d 115, 118-119 [73 O.O.2d 101]. Since the SERB is an agency of the state, a decision made by the SERB is not appealable pursuant to the rights granted in R.C. 2506.01.

Further, by the specific terms of R.C. 4117.06, relator is precluded from appealing the order of the SERB. Subdivision (A) of R.C. 4117.06 states: "The State Employment Relations Board shall decide in each case the unit appropriate for the purposes of collective bargaining. *The determination is final and conclusive and not appealable to the court.*" (Emphasis added.)

R.C. 2731.05 provides that a writ of mandamus must not be issued where there is a plain and adequate remedy at law. The existence of the remedy of appeal does not necessarily bar the issuance of a writ of mandamus. *State, ex rel. Emmich,* v. *Indus. Comm.* (1947), 148 Ohio St. 658 [36 O.O. 265]; *State, ex rel. Cody,* v. *Toner* (1983), 8 Ohio St. 3d 22, 23. For a remedy at law to be adequate, the remedy should be complete in its nature, beneficial and speedy. *State, ex rel. Merydith Constr. Co.,* v. *Dean* (1916), 95 Ohio St. 108, 123. The question is whether the remedy is adequate under the circumstances. *State, ex rel. Butler,* v. *Demis* (1981), 66 Ohio St. 2d 123, 124 [20 O.O.3d 121]. The relator herein and the employees it seeks to represent will be denied recognition of their rights under the Act until a final determination is made as to the constitutionality of the

provision in question. Through any appeal process, assuming one was available, the final determination would be months, and more likely years, away and these employees would never be able to recover or enjoy those rights accorded to employees by the Act. We find that relator does not have a plain or adequate remedy at law.

Respondent's argument that relator should bring a declaratory judgment action in a trial court is also not well-taken. In *State, ex rel. Fenske, v. McGovern* (1984), 11 Ohio St. 3d 129, at paragraph two of the syllabus, we held:

"The availability of an action for declaratory judgment does not bar the issuance of a writ of mandamus if the relator demonstrates a clear legal right thereto, although the availability of declaratory judgment may be considered by the court as an element in exercising its discretion whether a writ should issue. However, where declaratory judgment would not be a complete remedy unless coupled with ancillary relief in the nature of mandatory injunction, the availability of declaratory injunction is not an appropriate basis to deny a writ to which the relator is otherwise entitled."

Thus, we find that it was proper for relator to seek the remedy of mandamus. Accordingly, we determine that the "Dayton Amendment" is unconstitutional.

Since the "Dayton Amendment" is unconstitutional, it is null and void, and the SERB is under a duty to consider relator's Request for Voluntary Recognition in accordance with the law. We, therefore, hold:

(1)  The collective bargaining law of the state of Ohio is a law of a general nature. As such, the second sentence of R.C. 4117.01(F)(2) violates Section 26, Article II of the Ohio Constitution in that the provision in question does not have a uniform operation throughout the state of Ohio.

(2)  The second sentence of R.C. 4117.01(F)(2) is null and void as it offends the equal protection guarantees of Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution since the classification contained therein bears no rational relationship to the legitimate governmental purposes of the collective bargaining Act.

Thus, relator has a clear legal right to have its Request for Voluntary Recognition considered by the SERB in accordance with the law and the SERB is under a clear legal duty to consider the request in accordance with the law. Relator has no adequate remedy at law.

A writ of mandamus is hereby issued ordering the SERB to reinstate its case No. 84-VR-04-0231 upon its docket within thirty days from the date of issuance of the writ and to resolve that case in accordance with the law.

*Writ allowed.*

CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., concur.

CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., concur separately.

LOCHER, HOLMES, and WRIGHT, JJ., concur in the syllabus and judgment only.

CELEBREZZE, C.J., concurring. On July 6, 1983 Governor Richard Celeste signed into law Am. Sub. S.B. No. 133, the provisions of which thereafter took effect on October 6, 1983 and April 1, 1984. The passage of Ohio's Public Employees Collective Bargaining Act ended years of public controversy and legislative debate concerning the rights of Ohio's public employees. Heralded into place was a comprehensive collective bargaining law which has brought, and will continue to bring, substantial changes in the relationship between most of Ohio's public workers and their employers. Through the passage of this Act, Ohio has wisely joined a majority of its sister states which already offer bargaining rights to public employees.

Unfortunately, as this case demonstrates, the controversy surrounding public employee bargaining is far from over. As one commentator has predicted, "[w]ith the enactment of Senate Bill 133 * * * [t]he arena will simply shift from the floors of the statehouse to the confines of the courts * * *."[6]

There can be no doubt that the Act is a law of statewide concern. It is conceded that the law is of a "general nature," as that term is used in Section 26, Article II of the Ohio Constitution. *Andrews* v. *State, ex rel. Henry* (1922), 104 Ohio St. 384. Once recognized as such, the question in the case at bar narrows to whether the challenged portion of R.C. 4117.01(F)(2) has "a uniform operation throughout the state." See *Andrews, supra,* at 386.

Respondents argue, *inter alia,* that R.C. 4117.01(F)(2) does not, on its face, single relator out from the given class of public employees (*i.e.,* members of police and fire departments) afforded collective bargaining rights under R.C. Chapter 4117. Respondents stress that the language of this subsection is applicable to every location in the state in which the specified statutory conditions are present: where a public employer, pursuant to a judicial decision rendered prior to June 1, 1982, declined to collectively bargain with certain police or fire personnel on the grounds that they were supervisors. Because there is no language within the statute itself limiting its application to the city of Dayton, respondents reason that the law comports with the "uniform application" requirement. Indeed, the

---

[6] White, Kaplan & Hawkins, Ohio's Public Employee Bargaining Law: Can It Withstand Constitutional Challenge? (1984), 53 U. Cin. L. Rev. 1, at 46.

suspect clause does not specifically name relator. However, respondents' proposition, although literally accurate, is not a realistic assessment of the applicability of R.C. 4117.01(F)(2) to municipalities other than Dayton.

In this regard, it is abundantly clear that the second sentence of R.C. 4117.01(F)(2), referred to by the Mayor of Dayton as the "Dayton Amendment," operates to exclude select police officers in the city of Dayton, *and only Dayton,* from the collective bargaining Act. The State Employment Relations Board's opinion states as its finding that "[t]he language of R.C. 4117.01(F)(2) was intended to apply, and does apply, exclusively to the Dayton Police Department. Hence it is obvious that the statute was intended to exempt the Dayton safety employees who fit the statutory category." *A priori,* a conclusion that Dayton is the *only* municipality known to be subject to this statutory exception is inescapable.

It is also clear that Ohio's Constitution does not preclude all legislative classification but has been viewed to require only that the classification bear a reasonable relationship to the objectives sought to be accomplished. Once the legislature has established a particular classification, the law will not be invalidated unless it is clearly arbitrary, unjust, capricious, or unreasonable. *State* v. *Hogan* (1900), 63 Ohio St. 202, 210. However, I agree with my colleagues that there is no just reason for arbitrarily denying Dayton's safety officers the rights enjoyed by all others. When necessary the courts will look to the operation and application of statutes, apparently neutral on their face, and strike those that do not operate equally and uniformly as to all members of a class brought within their operation. *E.g., New York Central Rd. Co.* v. *Bucyrus* (1933), 126 Ohio St. 558; *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259 [17 O.O.3d 167]; *Cox* v. *State* (1938), 134 Neb. 751, 279 N.W. 482; *Christen* v. *County of Winnebago* (1966), 34 Ill. 2d 617, 218 N.E. 2d 103. See, also, *State* v. *Rogers* (1967), 281 Ala. 27, 198 So. 2d 610.[7]

For us to adopt respondents' untenable contention, we would, by construction, have to blindly uphold a special law which is in direct violation of the interdiction of Ohio's Constitution. We decline to do so.

In short, I can find no legitimate purpose nor justifiable reason why the city of Dayton's safety workers should not join their fellow public employees in the "brave new world" of collective bargaining under Ohio's Public Employees Collective Bargaining Act.[8]

Accordingly, I wholeheartedly join, and indeed applaud, the excellent

---

[7] For example, in *New York Central Rd.* v. *Bucyrus, supra,* this court reviewed and invalidated a law which purported to be applicable to any village with a population of 3,066. However, it turned out that only one village met this qualification. The law was found to violate Section 26, Article II of the Ohio Constitution.

[8] O'Reilly, Structures and Conflicts: Ohio's Collective Bargaining Law for Public Employees (1983), 44 Ohio St. L.J. 891, 942.

analysis contained in today's majority decision.[9] The infirmities of singling out these Dayton police officers by arbitrarily creating two classes of employees, thus forfeiting forever these workers' rights to collectively bargain, makes this provision repugnant to Section 26, Article II of the Ohio Constitution and capriciously thwarts the laudatory goals giving rise to the Act.

SWEENEY and C. BROWN, JJ., concur in the foregoing concurring opinion.

---

[9] I hasten to re-emphasize that today's decision which strikes only the second sentence of R.C. 4117:01(F)(2) as void, does not affect the validity of the rest of the Public Employees Collective Bargaining Act.