OPINION
{¶ 1} This matter comes before the court on appeal from a judgment of the Franklin County Court of Common Pleas affirming a decision of the State Employment Relations Board ("SERB") in favor of appellee, Pauline Bryant and against appellants, Service Employees International Union District 1199, AFL-CIO and union representatives Deborah Perkins and Michele Gray (collectively, "the union").
{¶ 2} Bryant was employed as a registered nurse with the Ohio Corrections Medical Center ("CMC") and was a member of the union. The CMC of Ohio is the medical center and health care provider for individuals incarcerated by the Ohio Department of Rehabilitation and Correction. The CMC is a party to a collective bargaining agreement ("CBA") with the union which represents the interests of the health care professionals employed by CMC.
{¶ 3} The CBA contains a grievance procedure which culminates in binding arbitration. At Article 24, Section 24.03(A), the CBA provides that "when the agency [CMC] determines that overtime is necessary, overtime shall be offered on a rotating basis, at least to the first five (5) qualified employees with the most state seniority who usually work the shift where the opportunity occurs." As a result, the parties had agreed that any opportunity to work overtime would first be offered to the employees in the location or department where the overtime was needed. In order to put this policy into effect, the parties created a "call list," an overtime "roster," and a monthly "sign-up sheet." Using these techniques, overtime was to be offered on a rotating basis first to employees on the shift and department where the overtime was needed, and then to qualified senior employees at the worksite. However, during the period covering May 21, 1999 to June 16, 1999, a number of CMC employees complained that CMC was not abiding by the overtime provisions of the CBA.
{¶ 4} On June 16, 1999, volunteer union representative, Deborah Perkins, filed a grievance on behalf of a number of the nurses who worked in her department, alleging that CMC had assigned overtime to employees who worked outside of the department and had not offered the overtime to the employees who worked within the department as required by the CBA. In June, four individuals came forward and personally requested that Perkins list them as named grievants on a formal complaint. Perkins also listed two additional individuals on the grievance when she learned that those individuals had made the same overtime complaint to another union representative.
{¶ 5} Although Bryant was employed in the same department as the named grievants and therefore was contractually entitled to the same offer of overtime, neither Perkins nor Hill personally named Bryant in the grievance. The record has strong evidence that Bryant was aware of the availability of overtime work as well as the manner in which to obtain overtime. Nonetheless, she regularly refused such work and had no complaint regarding the manner in which it was being assigned until December 1999, when she overheard her co-workers discussing the settlement of the grievance. Importantly, Bryant testified that she did not ask the union to file a grievance on her behalf. Thus, in one manner or another, all of the grievants who participated in the settlement personally sought out their union representatives in order to pursue their grievance.
{¶ 6} Pursuant to the terms of the CBA, the grievance Perkins filed alleging noncompliance with the overtime provisions of the agreement had to be filed within 15 days of the violation giving rise to the grievance, as Article 7.04 of the agreement provides:
{¶ 7} "* * * When a group of bargaining unit employees desires to file a grievance involving an alleged violation that affects more than one (1) employee in the same way, the grievance may be filed by the union. A grievance so initiated shall be called a Class Grievance. Class Grievances shall be filed by the Union within fifteen (15) days of the date on which the grievant(s) knew or reasonably could have known of the event giving rise to the Class Grievance. Class Grievances shall be initiated directly at Step Two (2) of the grievance procedure if the entire class is under the jurisdiction * * * of more than one (1) Step Two (2) management representative. The Union shall identify the class involved, including the names if necessary, if requested by the agency head or designee."
{¶ 8} Under that provision, grievances involving more than one employee are to be filed directly at "Step 2" of the grievance procedure, or, if the grievance involves multiple grievants who work for more than one "Step 2" supervisor, the grievance may be filed directly at "Step 3" of the procedure. In order to resolve disputes arising under the CBA, a group of trained mediators and arbitrators was formed from which individuals are called upon to mediate and/or arbitrate disputes. On August 12, 1999, a "Step 3" hearing was held, and the grievance Perkins filed was denied. Thereafter, the grievance proceeded to mediation on November 8, 1999, as provided for under "Step 4" of the grievance procedure. The mediation took place at the state of Ohio, Office of Collective Bargaining and, through the parties' efforts, the grievance was settled.
{¶ 9} By the time the matter reached mediation, Perkins allegedly had become aware that Bryant also would have been entitled to overtime had she wished to work additional hours. Therefore, Perkins attempted to include Bryant in the settlement of the grievance. The mediator, however, stated that Bryant could not participate in the settlement as she had not been added, nor had she brought a grievance of her own in a timely manner. Moreover, in an advisory opinion, the mediator stated that, in his opinion and from drawing upon past experience, if the matter was taken to arbitration, the arbitrators also would refuse to allow Bryant to be included in the grievance.
{¶ 10} On December 21, 1999, Perkins and Gray met with officials from the Office of Collective Bargaining in order to execute the settlement agreement. Undeterred by the mediator's refusal to include Bryant in the settlement agreement, or his advisory opinion about the result if the matter were taken to binding arbitration, Perkins and Gray once again attempted to include Bryant in the settlement of the grievance. Specifically, they drafted the following addendum which they submitted for incorporation:
{¶ 11} "Union and Management agree that per Sections 7.04, and 7.10A of the current contract, that the class involved in the above grievance should include all RN-2's that are listed on the overtime call list for the time period in question. Therefore Pauline Bryant RN-2 Will [sic] be included in the settlement of this grievance."
{¶ 12} CMC declined to voluntarily pay Bryant according to the terms of the settlement agreement. Although the union representatives repeatedly tried to include Bryant in the settlement of the June 16, 1999 grievance, their efforts during the nonbinding portion of the contractual process were unsuccessful. Having failed to secure participation in the settlement, on January 21, 2000, Bryant filed two unfair labor practice charges against the union, alleging as follows:
{¶ 13} "I, Pauline Bryant, am a RN2 for the State of Ohio/Corrections Medical Center (CMC). I received a copy of an ammendment [sic] to class grievance # 27-04-990707-0362-02-11, on 22 Dec. 99. Debaroh [sic] Perkins and Michelle Gray are the DRC/CMC delegates, parties to the grievance. The delegates contends [sic] that between May 31, 1999 and Jun [sic] 16, 1999, CMC Management `did not contact any staff members on any shifts regarding overtime opportunities on all shifts that resulted from call offs or other staff shortages.' The union sought as its remedy that eight (at time and one half) be awarded for each missed overtime opportunity, for each impacted employee. To this end the following RN2's received awards: John Kershner, Kevin Swords, Toni Brady and Lesa Morris. I was not represented in the class grievance by the Union or CMC delegates D. Perkins or M. Gray. I charge that these delegates and the union violated my rights to fair representation by intentionally ommitting [sic] my name from the class grievance."
{¶ 14} On June 22, 2000, SERB found probable cause sufficient to warrant a hearing before an Administrative Law Judge ("ALJ"). After an evidentiary hearing before the ALJ on September 6, 2000, as well as post-hearing briefs, on November 21, 2000, the ALJ issued a proposed order concluding that the union had violated R.C. 4117.11(B)(1) and (B)(6) when it settled a grievance without including a known member of the affected class.
{¶ 15} On December 13, 2000, the union filed exceptions to the proposed order of the ALJ. On March 1, 2001, SERB issued a decision in which it found that the union had violated its duty of fair representation. The union timely appealed that order to the Franklin County Court of Common Pleas, and the court of common pleas released a decision affirming SERB's order. The union appeals the order of the trial court, setting forth the following six assignments of error:
{¶ 16} "[1.] The common pleas court erred in affirming the order of appellee State Employment Relations Board (`SERB') that appellants violated R.C. 4117.11(B)(1) and (B)(6). SERB's order was not supported by substantial evidence and should have been reversed under the standards applicable to R.C. 4117.13 appeals.
{¶ 17} "[2.] The court of common pleas erred to the prejudice of appellants by failing to review and analyze the SERB opinion and order from which the appeal was taken, and by failing to correctly apply the appropriate standards of review.
{¶ 18} "[3.] The court of common pleas erred in granting deference to an administrative interpretation of a collective bargaining agreement, especially where the administrative interpretation differed from that of the contractually established mediator upon whose interpretation appellants had relied in settling the grievance at issue. SERB's order substituted the judgment of SERB for that of the contractually established mediator and the common pleas court erred in allowing SERB's opinion and order to stand.
{¶ 19} "[4.] The common pleas court erred to the prejudice of appellants in affirming the opinion and order of SERB that appellants would have been successful in arbitrating a claim for Bryant and could have settled claims for the named grievants while proceeding to arbitration on Bryant's claim, and the common pleas court also erred in affirming the opinion and order of SERB that appellants failed to take a basic and required step of the grievance procedure with regard to Bryant and that appellant's reliance upon the opinion of the contractually established mediator was arbitrary.
{¶ 20} "[5.] The common pleas court erred to the prejudice of appellants in upholding SERB's order and determination that appellants engaged in unfair labor practices against Pauline Bryant in settling a grievance in which Bryant was not named and had never requested that the union pursue, and the court also erred in failing to find that Bryant's claims were barred by her failures to file or attempt to file a grievance.
{¶ 21} "[6.] The trial court erred to the prejudice of appellant Union in affirming SERB's opinion and order that the Union was a proper party to the complaint."
{¶ 22} All of the union's assignments of error, except the second, similarly challenge SERB's adjudication of Bryant's grievance. They therefore will be discussed jointly.
{¶ 23} The Ohio Supreme Court explained the review process on appeal in Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, that:
{¶ 24} "R.C. 4117.13(D) governs appeals of SERB's orders to courts of common pleas. It provides in relevant part:
{¶ 25} "`Any person aggrieved by any final order of the board granting or denying, in whole or in part, the relief sought may appeal to the court of common pleas of any county where the unfair labor practice in question was alleged to have been engaged in, or where the person resides or transacts business, by filing in the court a notice of appeal setting forth the order appealed from and the grounds of appeal * * *.
{¶ 26} "`The court has exclusive jurisdiction to grant the temporary relief or restraining order it considers proper, and to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the board. The findings of the board as to the facts, if supported by substantial evidence on the record as a whole, are conclusive. (Emphasis added.)'
{¶ 27} "In Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260, 533 N.E.2d 264, 266, this court described the extremely deferential standard of review applied to factual determinations of SERB pursuant to R.C. 4117.13(D). We observed therein that disputes as to conflicting evidence `* * * are properly determined by SERB, which was designated by the General Assembly to facilitate an amicable, comprehensive, effective labor-management relationship between public employees and employers. State, ex rel. Dayton Fraternal Order of Police Lodge No. 44, v. State Emp. Relations Bd. (1986), 22 Ohio St.3d 1,5, 22 OBR 1, 4, 488 N.E.2d 181, 184-185. As long as SERB's decision on such matters is supported by substantial evidence, it must be affirmed. Courts should not be required to intervene in every factual dispute between contesting parties.'
{¶ 28} "When undertaking a review of an order of adjudication rendered by an administrative agency, a court of common pleas acts in a limited appellate capacity. See, generally, Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 279-280, 58 O.O. 51, 53-54,131 N.E.2d 390, 393-394.
{¶ 29} "Accordingly, while resolution of conflicting evidence is the province of SERB, the determination of whether the order of the agency can withstand the standard of review prescribed by R.C. 4117.13(D) is essentially a question of law for the court of common pleas. As such, a reviewing court which seeks to ascertain whether the common pleas court has applied the appropriate standard of review to SERB's factual findings is not compelled to adhere to the conclusion reached by the common pleas court. Rather, it is the prerogative and the responsibility of the court entertaining the appeal to investigate whether the lower court accorded due deference to the factfinder.
{¶ 30} "This is not unlike the function performed by this court in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 10 OBR 408,461 N.E.2d 1273, and in Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407, and prescribed by R.C. 119.12 for courts of appeals." Id. at 343-344.
{¶ 31} Given that law, we initially note that Bryant's complaint against the union charged the union with violating her "rights to fair representation by intentially omitting [sic] [her] name from the class grievance." Because that is the only issue set forth in Bryant's complaint, it arguably is the only issue SERB should have decided. Instead, SERB framed the issue it determined as: "District 1199, Service Employees International Union, AFL-CIO * * * Ms. Michele Gray, and Ms. Doborah Perkins [sic] violated Ohio Revised Code * * * by settling a class grievance without including a known member of the affected class in the settlement."
{¶ 32} In resolving the issue it framed, SERB divided the issue into two parts: whether the union breached its duty to Bryant in failing to include Bryant in the filed grievance, and whether the union breached its duty in settling the grievance without including Bryant. SERB applied R.C. 4117.11(B)(1) and (B)(6), which provide:
{¶ 33} "(B) It is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to:
{¶ 34} "(1) Restrain or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code. * * *
{¶ 35} "* * * [or]
{¶ 36} "(6) Fail to fairly represent all public employees in a bargaining unit[.]"
{¶ 37} In its opinion, SERB explained that when an unfair labor practice charge is filed which alleges that a union has violated its duty of fair representation under R.C. 4117.11(B)(1) and (B)(6), SERB determines whether the union has acted either arbitrarily, discriminatorily, or in bad faith. A breach of the union's duty exists if any of these factors is present. In this case, there was no allegation that the union acted in bad faith or in a discriminatory manner. Thus, SERB first determined whether the union's failure to specifically name Bryant on the class grievance was an arbitrary omission.
{¶ 38} SERB explained that it has adopted the analysis of the United States Sixth Circuit Court of Appeals in order to determine whether or not conduct is arbitrary. In Vencl v. Internatl. Union of Operating Engineers (1998), 137 F.3d 420, 426, the court held that: "[a]bsent justification or excuse, a union's negligent failure to take a basic and required step, unrelated to the merits of the grievance, is a clear example of arbitrary and perfunctory conduct which amounts to unfair representation." SERB explained that a union has certain basic and required actions that it must take in order to fulfill its duty of fair representation. It then listed several examples, including the filing of a grievance, the processing of a grievance, as well as the duty to mediate and/or arbitrate the grievance when appropriate.
{¶ 39} SERB also noted that the parties' CBA contains a grievance procedure which culminates, if need be, in final, binding arbitration. Class grievances under the CBA could be initiated in three ways. First, a grievance could be designated a "class action," and filed listing some or all of the names of grievants. Second, a grievance could be filed as a class action by merely listing several names of similarly situated grievants. Finally, a class grievance could also be filed listing no names at all.
{¶ 40} In this case, Perkins filed a class grievance at "Step 3" of the CBA grievance procedure, which listed several names, and which was also signed by two of the named individuals. In the grievance, Perkins alleged that "[m]anagement did not contact any staff members on any shifts regarding overtime opportunities on all shifts that resulted from call offs or other staff shortages." Although Bryant's name was not listed on the grievance, she was a known member of the class whose name was listed on the overtime call sheet which CMC should have used.
{¶ 41} SERB, however, determined that Perkins requested relief for all of the nurses, not only those named on the grievance, who had missed overtime opportunities as a result of CMC's failure to abide by the terms of the CBA. Thus, while the grievance was not specifically labeled a "class grievance," SERB deemed it a class grievance because it requested relief for six named employees as well as all others similarly situated. SERB thus determined that the union had not acted in an arbitrary manner when it did not list Bryant's name on the grievance. In its opinion, SERB explained:
{¶ 42} "In our review of what constitutes arbitrary acts, we are not requiring union officials to endlessly search for all potential unnamed grievants to determine if any of them wishes to file a grievance on a particular issue before filing a grievance. Under many collective bargaining agreements, the time period for initiating a grievance is relatively brief. * * *
{¶ 43} "In the present case, the CBA requires the Union to identify the class members by name only when requested by the Agency Head or designee. Under `Statement of the Grievance' Ms. Perkins wrote: `Management did not contact any staff members on any shifts regarding overtime opportunities on all shifts that resulted from call offs or other staff shortages.' * * * The essential elements of a class grievance under the CBA are met when more than one bargaining-unit member files a grievance alleging a violation that affects more than one member in the same way. Although the grievance in question was not labeled a class grievance, it falls within the description of a class grievance according to the CBA's terms." (Emphasis sic.) Id. at 7.
{¶ 44} SERB went on to note that the documents acknowledging receipt of the grievance and rescheduling of the grievance both refer to it as a class action. It also explained that the grievance was filed at "Step 3," in accordance with the CBA's requirement for class grievances. Accordingly, SERB concluded that the omission of Bryant's name from the initial filing of the grievance did not deprive her of her status as a member of the affected class. SERB arguably did not err in concluding that the union did not act in an arbitrary manner when it did not list Bryant's name on the filed grievance. Even if SERB properly decided the first of the two parts of the issue it framed, it erred in its conclusion under the second part.
{¶ 45} SERB's second determination, challenged by the union was that the union acted in an arbitrary manner in violation of R.C.4117.11(B)(1) and (B)(6) when it settled the grievance excluding one known member of the class. We cannot agree.
{¶ 46} Perkins and Gray attempted more than once to include Bryant in the settlement. The mediator refused to permit it and later issued an advisory opinion that the arbitrators would have refused to allow Bryant to participate in the settlement. With those facts, we are unable to conclude the union failed Bryant. See Curth v. Faraday, Inc. (E.D.Mich. 1975), 401 F. Supp. 678, 681 (concluding union's failure to arbitrate a grievance because of a lack of local union funds and because the union had been advised that the arbitrator would likely rule against the grievance did not constitute arbitrary conduct because the decision not to proceed to arbitration was based on rational and objective grounds).
{¶ 47} In addition, we are reluctant to conclude the union should have jeopardized a settlement beneficial to all concerned members, except Bryant, in order to take the matter to the next level in the grievance process in an attempt to include Bryant. See, e.g., Lowe v. Hotel 
Restaurant Employees Union, Local 705 (1973), 389 Mich. 123, 145-147,205 N.W.2d 167 ("[h]aving regard for the good of the general membership, the union is vested with discretion which permits it to weigh the burden upon contractual grievance machinery, the amount at stake, the likelihood of success, the cost, even the desirability of winning the award, against those considerations which affect the membership as a whole"). As a result, we cannot conclude the union acted arbitrarily in the face of a mediator that repeatedly refused to allow the union to include Bryant in the settlement, and a settlement that was beneficial to all the other settling members.
{¶ 48} Under the totality of the largely undisputed facts and circumstances presented in this matter, SERB erred in concluding that the union should have taken steps beyond the mediation level on Bryant's behalf. While the mediator's advisory opinion was not binding, it provided enough guidance to the union to take the union's actions outside the realm of arbitrary. Moreover, the record does not indicate that Bryant ever requested the union take the matter to the next level in the grievance procedure, or that SERB concluded an attempt to pursue the next level likely would have resulted in a ruling favorable to Bryant, given the mediator's opinion to the contrary.
{¶ 49} For the foregoing reasons, the first, third, fourth, fifth and sixth assignments of error are sustained to the extent indicated, rendering the second assignment of error moot. Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed and the matter is remanded to that court with instructions to return the matter to SERB to enter a determination that the union did not commit an unfair labor practice.
Judgment reversed and case remanded with instructions.
BRYANT and TYACK, JJ., concur.
PETREE, P.J., dissents.