CITY OF CANTON, APPELLEE, *v.* WHITMAN, DIR. OF
ENVIRONMENTAL PROTECTION, APPELLANT.

(No. 75-282—Decided November 19, 1975.)

*Mr. Harry E. Klide*, city solicitor, and *Mr. William J. Hamann*, for appellee.

*Mr. William J. Brown*, attorney general, and *Mr. Christopher R. Schraff*, for appellant.

STERN, J. The issue raised in this case is, generally, whether the state may require a municipality to fluoridate a municipally-owned-and-operated water supply, and, specifically, whether R. C. 6111.13, which requires fluoridation, is a valid exercise of the state police power.[1]

---

[1]R. C. 6111.13, as amended by the General Assembly in 1972 (134 Ohio Laws 766), provides in pertinent part:

"If the natural fluoride content of supplied water of a public water supply and water-works system is less than eight-tenths milligrams per liter of water, fluoride shall be added to such water to maintain a fluoride content of not less than eight-tenths milligrams per liter of water nor more than one and three-tenths milligrams per liter of water beginning:

"(A) On or before January 1, 1971, for a public water supply and water-works system supplying water to twenty thousand or more persons:

"(B) On or before January 1, 1972, for a public water supply

The purpose of fluoridation is well-known. Fluorides help prevent and control the incidence of dental caries. Fluoridation has become a familiar public health measure and water-works system supplying water to five thousand or more persons, but less than twenty thousand persons. A municipal corporation may request the environmental protection agency for reimbursement of the actual cost of acquiring and installing equipment, excluding chemicals added to the water supply, necessary for compliance with division (A) or (B) of this section. The director of environmental protection, upon determination of the necessity of this cost for this purpose, shall order the reimbursement for such costs, from funds available to the agency."

Between 1969 and 1973, R. C. 6111.13 also provided:

"Within one hundred twenty days after November 17, 1969, a petition may be filed with the board of elections of a county containing a political subdivision served by a public water supply to which fluoride must be added under this section and where fluoride was not regularly added to such water supply prior to the filing of such petition, requesting that the issue of adding fluoride to this water supply be placed on the ballot at a special election in the political subdivisions of the county or adjoining counties served by the water supply, to be held on a date specified in the petition, not less than ninety nor more than one hundred twenty days after the date of filing the petition.

"The petition shall meet the requirements of Section 3501.38 of the Revised Code and, in addition, shall designate the political subdivisions in the county and adjoining counties served by the water supply and shall be signed by not less than ten per cent of the number of electors served by the water supply of each political subdivision who voted for Governor at the last preceding gubernatorial election. The board of elections shall place the issue on the ballot at the special election to be held in the political subdivisions served by the water supply.

"If a water supply extends into more than one county, the board of elections of the county where the petitions are filed shall, within ten days after such filing, send notice of such filing to all other boards of elections of counties served by the water supply and shall furnish all ballots for the special election.

"In political subdivisions where only a part of the electors are served by the water supply, only those electors shall be allowed to vote on the issue who sign forms provided by the board of elections stating that they are served by the water supply. The question of adding fluoride to the water supply shall be determined, at this election, by a majority vote of those voting on the issue."

The latter provisions were repealed in 1973 (135 Ohio Laws 1109), by which time the 120-day period for filing of petitions had expired.

in the past two decades, and it is beyond questioning a proper subject for legislation pursuant to the police power. *Kraus* v. *Cleveland* (1955), 163 Ohio St. 559, 127 N. E. 2d 609; *Alkire* v. *Cashman* (S. D. Ohio E. D. 1972), 350 F. Supp. 360; *Dowell* v. *Tulsa* (Okla. 1954), 273 P. 2d 859; *Paduano* v. *New York* (1966), 17 N. Y. 2d 875, 218 N. E. 2d 339; Annotation, 43 A. L. R. 2d 453.

In *Kraus, supra,* we held that a municipality could fluoridate its municipally-owned water supply, as a proper exercise of the police power. Here, the city of Canton does not wish to fluoridate its water, and the issue is whether the state may order the city to do so.

The city contends that fluoridation is a matter of local self-government and of the operation of a municipal public utility, matters which are reserved for municipal control under the home-rule provision of the Ohio Constitution.

Section 3 of Article XVIII of the Ohio Constitution provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

This section, adopted in 1912, preserved the supremacy of the state in matters of "police, sanitary and other similar regulations," while granting municipalities sovereignty in matters of local self-government, limited only by other constitutional provisions. Municipalities may enact police and similar regulations under their powers of local self-government, but such regulations "must yield to general laws of statewide scope and application, and statutory enactments representing the general exercise of police power by the state prevail over police and similar regulations in the exercise by a municipality of the powers of local self-government." *State, ex rel. Klapp.* v. *Dayton P. & L. Co.* (1967, 10 Ohio St. 2d 14, 225 N. E. 2d 230 (paragraph one of the syllabus); *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113, 205 N. E. 2d 382; *Cincinnati* v. *Hoffman* (1972), 31 Ohio St. 2d 163, 179, 285 N. E. 2d 714 (Brown, J., dissent-

ing); *Leavers* v. *Canton* (1964), 1 Ohio St. 2d 33, 37, 203 N. E. 2d 354.

Matters involving local self-government and those involving the police power often overlap. Even if a matter is of local concern, the local regulation may have significant extraterritorial effects, in which case it properly becomes a matter of statewide concern for the General Assembly. *Cleveland Electric Illuminating Co.* v. *Painesville* (1968), 15 Ohio St. 2d 125, 239 N. E. 2d 75; *Beachwood* v. *Bd. of Elections* (1958), 167 Ohio St. 369, 371, 148 N. E. 2d 921. Similarly, a matter which relates to exercise of the police power by a municipality, *e. g.*, the appointment of officers to the police force, may essentially be an exercise of local self-government not subject to state authority. *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, 151 N. E. 2d 722.

The power of local self-government and that of the general police power are constitutional grants of authority equivalent in dignity. A city may not regulate activities outside its borders, and the state may not restrict the exercise of the powers of self-government within a city. The city may exercise the police power within its borders, but the general laws of the state are supreme in the exercise of the police power, regardless of whether the matter is one which might also properly be a subject of municipal legislation. Where there is a direct conflict, the state regulation prevails.

The city contends further that the power to fluoridate is a "power of local self-government." That argument is necessarily rejected by the decision of this court in *Kraus* v. *Cleveland, supra.* See, also, *Beachwood* v. *Bd. of Elections, supra.* The decision to fluoridate is intrinsically one involving public health. Whether it is decided by an exercise of local self-government is irrelevant, for its validity must depend upon whether it bears a substantial relationship to the public health. In *Kraus,* the court held that fluoridation is a proper subject for exercise of the police power when enacted by a municipality, and was not "in contravention of the general laws in relation to adultera-

tion or the practice of medicine." Fluoridation is equally a proper subject for the exercise of the state police power, and a municipal ordinance in contravention of a general state law requiring fluoridation is invalid. The public health is a matter of state as well as local concern (*State, ex rel. Mowrer,* v. *Underwood* [1940], 137 Ohio St. 1, 27 N. E. 2d 773; *State, ex rel. Cuyahoga Heights,* v. *Zangerle* [1921], 103 Ohio St. 566, 134 N. E. 686), and that concern extends to those ills which affect us individually, as well as those which we transmit to one another.

As this court stated in *Kraus, supra,* at page 562:

"* * * An examination shows that laws relating to child labor, minimum wages for women and minors and maximum hours for women and minors have all been upheld on the basis of the police power in relation to public health. Regulations relating to control of venereal disease, blood tests for marriage licenses, sterilization, pasteurization of milk, chlorination of water and vaccination have all been held valid as based on police power exercised in regard to public health.

"Clearly neither an overriding public necessity or emergency nor infectious or contagious diseases are the criteria which authorize the exercise of the police power in relation to public health."

The city of Canton also contends that the fluoridation legislation interferes with the power to own or operate public utilities, granted by Section 4 of Article XVIII. That section reads:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. * * *"

Those rights and privileges are derived directly from the people through the Constitution, and the General Assembly may not impose restrictions upon the power to operate a public utility granted to a municipality under Article XVIII of the Ohio Constitution. *State, ex rel. McCann,* v.

*Defiance* (1958), 167 Ohio St. 313, 148 N. E. 2d 221; *Swank*
v. *Shiloh* (1957), 166 Ohio St. 415, 143 N. E. 2d 586; *Euclid*
v. *Camp Wise Assn.* (1921), 102 Ohio St. 207, 131 N. E. 349.
It may, however, enact legislation under its general police
power to protect the public health and safety. *State, ex rel.
McCann,* v. *Defiance, supra*; *Akron* v. *Pub. Util. Comm.*
(1948), 149 Ohio St. 347, 78 N. E. 2d 890; *Bucyrus* v. *Dept. of
Health* (1929), 120 Ohio St. 426, 166 N. E. 370.

The ownership and operation of a municipal water-
works is not limited by a state requirement that fluorides
be added to the water in the interest of the public health,
to any greater degree than by other health and safety re-
quirements affecting the purity of the water or the safety
of plant operations. The state, in fact, supplies the equip-
ment necessary to add the fluorides. An exercise of the po-
lice power necessarily occasions some interference with
other rights, but that exercise is valid if it bears a real and
substantial relationship to the public health, safety, morals
or general welfare, and if it is not unreasonable or arbitrary.
*Piqua* v. *Zimmerlin* (1880), 35 Ohio St. 507, 511. Fluorida-
tion is plainly a matter involving the public health; there
is no indication that it unreasonably restricts, limits, or
otherwise interferes with the operation of a municipal util-
ity .

The effect of fluoridating a water supply is a local one,
limited to the area served by the system.[2]

The local interest in the decision regarding fluoridation
is clear, while the interest of the state is not as direct as in
the areas of infectious diseases or of pollution. Cf. *Bucy-
rus* v. *Dept. of Health, supra.* However, the mandate of
Section 3 of Article XVIII of the Ohio Constitution is that
municipal exercise of the police power is valid only inosfar
as it does not conflict with general state laws, regardless of
whether the matter might also be decided locally.

---

[2]In the case of a municipal water supply, the area served is not
limited by municipal boundaries, for the municipality may sell any
amount of its surplus water to other communities. Section 6, Article
XVIII of the Ohio Constitution.

In fact, the General Assembly did permit the users of local water supplies to decide whether to fluoridate their water. R. C. 6111.13 contained provisions which authorized a special election to be called within 120 days of the effective date of the legislation, November 17, 1969, by the users of any water supply system which did not then add fluorides. The question of fluoridation would be decided by a majority vote. Thirty-eight such elections were held, and in thirty-six the vote was against fluoridation. No special election was held in the area supplied by the city of Canton water-works, although fluoridation had previously been rejected in two general elections.

The city contends that the local option provision of R. C. 6111.13 prevented that section from being valid as a general law, because its effect was to require some water suppliers to fluoridate, while allowing others, whose users held a referendum, to avoid that requirement.

The referendum provisions of R. C. 6111.13 are somewhat unusual, in that they require that the referendum be held, if at all, within 120 days, and require that the voters be only those using the water supply, regardless of the political subdivision in which they might reside. Essentially, however, the provisions are for a local option, and no claim is raised that those provisions are unreasonable.

The principle of local options is well-established. It is a legislative deferral to differing local needs and attitudes, a principle which is also embodied in the home-rule provisions. Local option laws are upheld by the great weight of authority (*Locke's Appeal* [1873], 72 Pa. 491, 13 Am. Rep. 716; 16 Am. Jur. 2d 508; 16 C. J. S. 680; 79 L. Ed. 562), and their enactment lies within the discretion of the General Assembly. As stated in *Stone* v. *Charlestown* (1873), 114 Mass. 214, 221:

"* * * In doing so, the Legislature does not, in any sense, delegate its constitutional authority, but, in the exercise of that authority, determines that if the inhabitants of that part of the state to be immediately affected by the proposed change assent to it, public policy requires it to be

made, and that, without such assent, the other considerations offered in support of it are not sufficient to justify its adoption by the Legislature. The question whether the act shall take effect at once, or only upon such acceptance by the inhabitants, is within the discretion of the Legislature to determine.''

A local-option law is also not objectionable as not having a uniform operation throughout the state, as required by Section 26 of Article II of the Ohio Constitution. As the court stated in *Gordon* v *State* (1889), 46 Ohio St. 607, 628, upholding a local option liquor law:

''* * * The provisions of the act are bounded only by the limits of the state, and uniformity in its operation is not destroyed, because the electors in one or more townships may not see fit to avail themselves of its provisions. The act makes no discrimination between localities to the exclusion of any township. Every township in the state comes within the purview of the law, and may have the advantage of its provisions by complying with its terms. The operation of the statute is the same in all parts of the state, under the same circumstances and conditions.'' See, also, *Cincinnati W. & Z. R. Co.* v. *Commrs. of Clinton County* (1852), 1 Ohio St. 77.

The fluoridation local option was similarly applied uniformly throughout the state, and made no discrimination between one locality and another. The users of all affected water supply systems were equally permitted to petition for a local option election.

For the reasons stated above, we disagree with the holding of the Court of Appeals that the inclusion by the General Assembly of local option provisions rendered the entire statute void because they were not reasonably related to the police power. It is, of course, true that the beneficial effects of fluoridation upon the public health are unrelated to the votes of a majority in any community. Medical research has proven fluoridation effective in reducing dental caries, and communities with fluoridated water will generally have better dental hygiene than those without fluoridation,

irrespective of a majority vote. Yet many persons strongly oppose fluoridation for religious and other reasons. Plainly, the General Assembly made a political compromise—it ordered fluoridation, but permitted users of particular water supplies to choose, by local option, to avoid that order under specified conditions. As in *Stone* v. *Charlestown, supra,* the Ohio General Assembly determined that "if the inhabitants of that part of the state to be immediately affected by the proposed change assent to it, public policy requires it to be made, and that, without such assent, the other considerations offered in support of it are not sufficient to justify its adoption by the * * * [General Assembly]."

The decision as to whether the benefits to the public health of fluoridation are sufficient to require it for all, notwithstanding the concerted opposition of many individuals, is within the discretion of the General Assembly. So, too, is the decision that those immediately affected by a local fluoridation program should have an option to decide that same question for themselves.

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and the orders of the Environmental Board of Review and the Director of Environmental Protection are affirmed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, W. BROWN and P. BROWN, JJ., concur.

CORRIGAN and CELEBREZZE, JJ., dissent.