RISPO REALTY & DEVELOPMENT COMPANY ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* CITY OF PARMA, APPELLEE AND CROSS-APPELLANT.

[Cite as Rispo Realty & Dev. Co. *v.* Parma (1990), 55 Ohio St. 3d 101.]

(No. 89-1514—Submitted October 2, 1990—Decided December 5, 1990.)

*Weston, Hurd, Fallon, Paisley & Howley, Ronald A. Rispo* and *Robert G. Shumay,* for appellants and cross-appellees.

*Christopher A. Boyko,* law director, and *Robin B. DeBell,* for appellee and cross-appellant.

*Walter, Haverfield, Buescher & Chockley, Charles T. Riehl, Jonathan D. Greenberg* and *Richard T. Hamilton, Jr.,* urging affirmance for *amicus curiae,* city of Solon.

MOYER, C.J. Parma asserts that, as a noncharter municipality and under powers it claims to possess pursuant to the "home rule" provision of Section 3, Article XVIII of the Ohio Constitution, it has the authority to enact zoning ordinances that are irreconcilable with the statutory scheme adopted by the state. For the reasons that follow, we hold that a noncharter municipality may not adopt a zoning ordinance that contains automatic referendum and ward veto provisions since those provisions are in direct conflict with R.C. 713.12 and 731.29.

The applicable constitutional provisions that delineate powers given to municipalities by the state are found in Sections 3 and 7, Article XVIII of the Ohio Constitution.

Pursuant to Section 7, a municipality is free to adopt its own form of government: "Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

Therefore, any municipality may, through the adoption of a charter, enact legislation specifically designed to address the needs and desires of its residents. A municipality that chooses to adopt a charter does so in order to manage its own purely local affairs without interference from the state, with the understanding that those local laws will not conflict with the constitution and general laws. A municipality that chooses not to adopt a charter "prescribing its form of government and defining its powers on purely local matters, is subject to general laws enacted by the state Legislature." *Harvey* v. *Brumback* (1960), 113 Ohio App. 45, 48, 17 O.O. 2d 45, 47, 177 N.E. 2d 70, 72.

Section 3, Article XVIII provides: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In adopting local laws, municipalities must be aware that "police,

sanitary and other similar regulations'' cannot conflict with general statutory provisions enacted by the General Assembly. For, as this court held in paragraph four of the syllabus in *State, ex rel. Canada* v. *Phillips* (1958), 168 Ohio St. 191, 5 O.O. 2d 481, 151 N.E. 2d 722: "The words 'as are not in conflict with general laws' found in Section 3 of Article XVIII of the Constitution, modify the words 'local police, sanitary and other similar regulations' but do not modify the words 'powers of local self-government.' "

In further interpreting Section 3, this court determined:

"This section, adopted in 1912, preserved the supremacy of the state in matters of 'police, sanitary and other similar regulations,' while granting municipalities sovereignty in matters of local self-government, limited only by other constitutional provisions. Municipalities may enact police and similar regulations under their powers of local self-government, but such regulations 'must yield to general laws of statewide scope and application, and statutory enactments representing the general exercise of police power by the state prevail over police and similar regulations in the exercise by a municipality of the powers of local self-government.' * * *" (Citations omitted.) *Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62, 65, 73 O.O. 2d 285, 287, 337 N.E. 2d 766, 769.

Ohio law has long recognized that the enactment of zoning laws by a municipality is an exercise of its police power as described under Section 3, Article XVIII of the Ohio Constitution. *Garcia* v. *Siffrin Residential Assn.* (1980), 63 Ohio St. 2d 259, 17 O.O. 3d 167, 407 N.E. 2d 1369, paragraph two of the syllabus. As a police power regulation, C.O. 1229.01(b) may not conflict with the "general laws" of Ohio.

General laws are those that operate uniformly throughout the state; they establish procedures that provide for the orderly government of municipalities. "* * * The words 'general laws' as set forth in Section 3 of Article XVIII of the Ohio Constitution mean statutes setting forth police, sanitary or other similar regulations and not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations." *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113, 118, 30 O.O. 2d 474, 477, 205 N.E. 2d 382, 386.

R.C. 713.12 discusses the notice and public-hearing requirements a municipality must follow prior to passing a zoning ordinance. It then provides:

"No such ordinance, measure, or regulation which violates, differs from, or departs from the plan or report submitted by the commission, board, or officer shall take effect unless passed or approved by not less than three-fourths of the membership of the legislative authority. No ordinance, measure, or regulation which is in accordance with the recommendations, plan, or report submitted by the commission, board, or officer shall be deemed to pass or take effect without the concurrence of at least a majority of the members elected to the legislative authority."

R.C. 731.29 subjects zoning ordinances to referendum in the following manner. Ten percent of specified electors of the municipality must file a petition with the city auditor within thirty days after the zoning ordinance has been passed by the legislative authority. By the seventy-fifth day prior to the next general election, the city auditor must certify the ordinance to the board of elections which, in turn, submits the ordinance to the general

populace at the general election. At that election, a majority of the electors either approve or reject the ordinance.

R.C. 713.12 and 731.29 were enacted by the General Assembly for the purpose of regulating municipalities in the exercise of their powers of local self-government. They set forth the procedural requirements municipalities must follow with respect to the passage and referendums of zoning ordinances. These statutes establish police regulations applicable to the public at large to provide for the orderly government of municipalities. Thus, R.C. 713.12 and 731.29 are general laws of the state.

A local ordinance conflicts with a state general law when " 'the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.' " *Fondessy Enterprises, Inc.* v. *Oregon* (1986), 23 Ohio St. 3d 213, 217, 23 OBR 372, 376, 492 N.E. 2d 797, 801, quoting *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519.

Determining whether a conflict exists requires us to examine inconsistencies and contradictions between the ordinance and the statute. As indicated in R.C. 713.12, any zoning ordinance which differs from the one submitted to city council by the zoning commission requires a three-fourths majority vote of council members for passage. If council and the zoning commission agree on the zoning ordinance, the ordinance passes upon a simple majority vote of the council members.

C.O. 1229.01(b), however, contemplates a very different procedure. Once city council approves the zoning ordinance "* * * it shall not be effective; rather, it shall be mandatory that the same be approved by a majority vote of the electors of the City, and of each ward in which property so changed is located."

According to R.C. 713.12, a zoning ordinance becomes effective upon an affirmative three-fourths or majority vote of the council members. According to C.O. 1229.01(b), a zoning ordinance becomes effective after an affirmative majority vote of the council members, an affirmative majority vote of the Parma electorate at large, and an affirmative majority vote of the electors in each affected ward.

Clearly, any zoning ordinance proposed in Parma must travel a long and arduous road to passage. Additional burdens are imposed by the local ordinance that go far beyond what is permitted by the state statutory scheme. The state has legislated the manner and method noncharter municipalities must follow when enacting zoning ordinances. In *Wintersville* v. *Argo Sales Co.* (1973), 35 Ohio St. 2d 148, 152, 64 O.O. 2d 88, 90, 299 N.E. 2d 269, 271-272, we held:

"The General Assembly, in adopting a statutory plan for the government of municipalities generally, as required by the Constitution, has specified the procedure to be followed with respect to the adoption of zoning ordinances. * * *

"Since the noncharter village of Wintersville was subject to the statutory enactments with respect to the procedure to be followed in the adoption of zoning ordinances, it was mandatory to adhere to the provisions of R.C. 713.12 * * *." (Citation omitted.)

The procedural requirements set forth in C.O. 1229.01(b) are incompatible with the procedural requirements set forth in R.C. 713.12; therefore, the local law and the state statute are in direct conflict.

Additionally, the automatic referendum and ward veto provisions contained in C.O. 1229.01(b) are also directly at odds with the state statute. According to R.C. 731.29, a zoning or-

dinance is subject to referendum only when ten percent of specified voters sign and file a valid petition with the city auditor. Pursuant to C.O. 1229.01(b), all zoning ordinances are automatically subject to referendum. Under state statute, a simple majority of voters can vote to pass the ordinance. Under Parma's law, in addition to passage by a simple majority of voters, another obstacle must be hurdled: a majority of voters in the ward directly impacted by the proposed zoning change must also vote for its passage.

C.O. 1229.01(b) effectively circumvents the procedural requirements of R.C. 731.29: it eliminates the necessity of filing a petition; it obviates the requirement that a referendum of a zoning ordinance must be initiated by at least ten percent of the electorate; and it completely destroys the need to meet mandated time deadlines. Additionally, it allows the voters of one ward to veto a provision that has previously been approved by both the legislative authority of the city and the electorate at large.

The provisions of the state statute and the local ordinance are incompatible. The automatic referendum and ward veto provisions are not contemplated by the state statutory scheme and C.O. 1229.01(b) is irreconcilable with R.C. 731.29: "* * * [T]he general laws of the state are supreme in the exercise of the police power, regardless of whether the matter is one which might also properly be a subject of municipal legislation. Where there is a direct conflict, the state regulation prevails." *Canton* v. *Whitman, supra,* at 66, 73 O.O. 2d at 288, 337 N.E. 2d at 770.

Parma is a noncharter city. Therefore, whatever reasonable and valid policy reasons may have prompted the adoption of C.O. 1229.01(b) must yield to the Ohio Constitution and the general laws of the state. C.O. 1229.01(b) is in direct conflict with R.C. 713.12 and 731.29. Therefore, C.O. 1229.01(b) must be declared invalid.

Since we can resolve this case on the basis of a direct conflict between a local police power regulation and the general laws of the state, we find it unnecessary to reach the issue of whether C.O. 1229.01(b) is also unconstitutional. It is well-established that where a case can be resolved upon other grounds, the constitutional question will not be determined. *Marich* v. *Knox Cty. Dept. of Human Services* (1989), 45 Ohio St. 3d 163, 543 N.E. 2d 776.

For the foregoing reasons, we affirm the court of appeals' determination invalidating the ward veto provisions of C.O. 1229.01(b), reverse the court of appeals' determination upholding the automatic referendum provisions of C.O. 1229.01(b), and declare C.O. 1229.01(b) invalid in its entirety.

*Judgment reversed in part*
*and affirmed in part.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.