[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 353.]

AUSTINTOWN TOWNSHIP BOARD OF TRUSTEES ET AL., APPELLEES, *v.* TRACY, TAX COMMR., ET AL., APPELLANTS.

**[Cite as Austintown Twp. Bd. of Trustees v. Tracy, 1996-Ohio-74.]**

*Taxation—Motor vehicle fuel tax—R.C. 5735.23(C) and 5735.27 do not violate the Uniformity Clause of Section 26, Article II of the Ohio Constitution.*

R.C. 5735.23(C) and 5735.27, which establish formulas by which motor vehicle tax revenues are allocated and distributed to municipalities, counties, and townships, do not violate the Uniformity Clause of Section 26, Article II of the Ohio Constitution.

(No. 95-1175—Submitted May 21, 1996—Decided August 21, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 94APE08-1134.

————————————

{¶ 1} R. C. 5735.05 establishes an excise tax on the use, distribution, or sale of motor vehicle fuel in Ohio ("gasoline tax"). Pursuant to complicated statutory formulas, revenues raised from the tax are distributed to the state itself, its various municipalities, its eighty-eight counties, and approximately fourteen hundred townships.

{¶ 2} This declaratory judgment action was brought by eight Ohio township boards of trustees located throughout the state, and five individual citizens, all of whom allegedly served as township trustees at the time the complaint was filed. The plaintiffs challenged various sections of R.C. Chapter 5735, and most directly, R.C. 5735.23(C) and 5735.27, which mandate allocation and distribution of gasoline tax revenues to municipalities, counties, and townships for road repair purposes.

{¶ 3} According to the challenged statutory formulas, gasoline tax funds distributed to counties are divided in equal proportion among all eighty-eight counties in the state, and funds distributed to townships are likewise divided in equal proportion

among all the state's townships. Funds distributed to municipalities are, however, allocated in proportion to the number of motor vehicles registered in each city as compared to the number of motor vehicles registered in all cities in the state. R.C. 5735.23(C)(2)(a), (b) and (c); 5735.27(A). Application of these formulas results in "small" townships (in terms of population or road mileage) receiving funds equal in amount to that received by "large" townships. Similarly, Ohio's municipal corporations may receive greater amounts of gasoline tax funds than do townships of similar populations, or road mileage, which have never incorporated.

{¶ 4} In their complaint, the plaintiffs claimed that R.C. 5735.27 violates Section 26, Article II of the Ohio Constitution (the "Uniformity Clause"), which provides, "All laws of a general nature, shall have a uniform operation throughout the state." They further alleged that application of R.C. 5735.27 violates the Due Process and Equal Protection Clauses of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution. The plaintiffs sought relief in the form of a declaration that R.C. 5735.27 is unconstitutional, and an order enjoining the State Treasurer from distributing any funds raised by the gasoline tax under the current statutory formulas. The plaintiffs further sought a court order directing the defendants to distribute gasoline tax revenues "in conformity to constitutional requirements."

{¶ 5} Following submission of stipulated evidence, briefs and oral arguments, the trial court concluded that the challenged sections of R.C. Chapter 5735 "violate Article II, Section 26 of the Ohio Constitution, because the distribution and allocation of taxes to repair roads solely on the basis of political subdivision boundaries is an artificial and unreasonable classification and distinction." The trial court also enjoined the State Treasurer from distributing gasoline taxes according to the statutory formulas, although it stayed enforcement of the judgment pending appeal. The trial court expressly found it unnecessary to reach the issues whether the statute violated due process and equal protection protections, in that the Uniformity Clause was dispositive.

{¶ 6} The court of appeals affirmed. It accepted the trial court's conclusion that the statutes bear no relationship to the number of road miles each political subdivision is required to maintain, and held that their application creates disparate results. In that the court of appeals found R.C. 5735.27 to violate Section 26, Article II of the Ohio Constitution, it further determined that the appellants' "arguments as to the standing of plaintiffs to assert equal protection and due process arguments ha[ve] become moot and need not be addressed."

{¶ 7} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Henderson, Covington, Messenger, Newman & Thomas Co., L.P.A.*, *James L. Messenger*, *Jerry M. Bryan; Joseph R. Bryan*; *Muldoon & Ferris* and *James W. Muldoon*, for appellees.

*Betty D. Montgomery*, Attorney General, *Jeffrey S. Sutton*, State Solicitor, *James C. Sauer* and *Andrew S. Bergman*, Assistant Attorneys General, for appellants.

*Taft, Stettinius & Hollister* and *William J. Seitz*, urging affirmance for *amicus curiae,* Hamilton County Township Association.

*Keith McNamara* and *Frederick A. Vierow,* urging reversal for *amicus curiae,* County Engineers Association of Ohio.

*John E. Gotherman* and *Malcolm C. Douglas*, urging reversal for *amici curiae* Ohio Municipal League, and the cities of Columbus, Akron, Canton, Cincinnati, Dayton, Toledo, Athens, Cleveland, Lakewood and Youngstown.

*Ronald J. O'Brien*, City Attorney, and *Daniel W. Drake*, Assistant City Attorney, for city of Columbus.

*Max Rothal*, Director of Law, and *David A. Munteau*, Assistant Director of Law, for city of Akron.

*Thomas M. Bernabei*, Director of Law, for city of Canton.

*Mark S. Schmollinger*, Director of Law, for city of Toledo.

*Sharon Sobel Jordan*, Director of Law, for city of Cleveland.

*Robert P. Milch*, Director of Law, for city of Youngstown.

*Fay D. Dupuis*, City Solictor, for city of Cincinnati.

*Garry E. Hunter*, Director of Law, for city of Athens.

*Sara J. Fagnilli*, Director of Law, for city of Lakewood.

*J. Anthony Sawyer*, Director of Law, for city of Dayton.

———————————

**MOYER, C.J.**

{¶ 8} The sole issue presented in this appeal is whether the statutory scheme of distribution of gasoline tax funds to municipalities, counties, and townships violates Section 26, Article II of the Ohio Constitution. Appellees argue that the allocative and distributive schemes created by R.C. Chapter 5735 violate the Uniformity Clause in that those schemes bear no rational relation to the stated purposes of the gasoline tax. The state officials who are the appellants contend that application of these formulas does not result in a violation of Section 26, Article II of the Ohio Constitution. We agree with appellants.

{¶ 9} We begin our analysis in light of the well-established principle that it is not the function of a reviewing court to assess the wisdom or policy of a statute but, rather, to determine whether the General Assembly acted within its legislative power. *State ex rel. Bishop v. Mt. Orab Village Bd. of Edn.* (1942), 139 Ohio St. 427, 438, 22 O.O. 494, 498, 40 N.E.2d 913, 919; *Primes v. Tyler* (1975), 43 Ohio St.2d 195, 72 O.O.2d 112, 331 N.E.2d 723. Similarly, we presume legislation enacted by the General Assembly to be constitutional, and will not declare it to be unconstitutional unless it "appear[s] beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State, ex rel. Dickman, v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus; *State, ex rel. Jackman, v. Cuyahoga Cty. Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 161, 38 O.O. 2d 404, 405, 224 N.E.2d 906, 908-909 ("[W]hen an enactment of the

4

General Assembly is challenged, the challenger must overcome a strong presumption of constitutionality.").

{¶ 10} From soon after adoption of the Uniformity Clause in the 1851 Constitution, this court has recognized that its purpose is to prohibit the enactment of *special* or *local* legislation. Thus, in *State v. Nelson* (1894), 52 Ohio St. 88, 39 N.E. 22, this court looked to the language of the clause itself, the debates of the constitutional convention, and prior uniform judicial construction placed upon the clause, and concluded that the purpose of Section 26, Article II was to ensure that general laws "cannot operate upon the named subject matter in *one part of the state* differently from what it operates upon it in other parts of the state. That is, the law must operate uniformly on the named subject matter in every part of the state, and when it does that it complies with this section of the Constitution." (Emphasis added.) *Id*. at 98, 39 N.E. at 23.

{¶ 11} Similarly, in *State ex rel. Wirsch v. Spellmire* (1902), 67 Ohio St. 77, 86, 65 N.E. 619, 622, we concluded that "'[u]niform operation throughout the state' means *universal operation as to territory; it takes in the whole state*. And, as to persons and things, it means universal operation as to all persons and things in the same condition or category. When a law is available in every part of the state as to all persons and things in the same condition or category, it is of uniform operation throughout the state." (Emphasis added.)

{¶ 12} In *Hixson v. Burson* (1896), 54 Ohio St. 470, 43 N.E. 1000, we recognized that laws applying to road construction and maintenance are laws whose subject matter is of a general nature. That being the case, our analysis for purposes of Section 26, Article II is confined to determining whether the statutory gasoline revenue distribution formulas apply uniformly throughout the state.

{¶ 13} The answer to this inquiry is undoubtedly in the affirmative. Appellees themselves have characterized the gasoline tax allocative and distributive schemes of R.C. Chapter 5735 as "statewide" in application. Indeed, no other conclusion can be

reached in view of the fact that every municipality, every county, and every township in the state of Ohio receives gasoline tax funds according to the formulas established in R.C. Chapter 5735, irrespective of the geographical part of the state in which those political entities lie.

{¶ 14} It is true that application of R.C 5735.23 benefits smaller townships at the expense of larger townships. However, this effect does not necessitate a finding that the Uniformity Clause is thereby violated.Arguments similar to those of the appellees were rejected in *Gordon v. State* (1889), 46 Ohio St. 607, 627-628, 23 N.E. 63, 64-65, which was cited with approval in *Canton v. Whitman* (1975), 44 Ohio St.2d 62, 73 O.O.2d 285, 337 N.E. 2d 766. In *Gordon,* the appellant contended that a statute violated the Uniformity Clause in that its application affected different townships differently. In finding no constitutional violation the court wrote: "The act makes no discrimination between localities to the exclusion of any township. Every township in the state comes within the purview of the law ***. The operation of the statute is the same in all parts of the state, under the same circumstances and conditions." *Id*. at 628, 23 N.E. at 65.

{¶ 15} Any gasoline tax distribution scheme devised by the General Assembly might well be criticized as "unfair" by some. We note in this regard that Ohio's political subdivisions do not rely solely on gasoline tax revenues to meet their statutory obligations to maintain roads and bridges, and that revenue raised from other sources is distributed in varied ways, according to varied formulas. R.C. Chapters 4501, 4504, and 4505 provide for distribution of revenues to political subdivisions raised through motor vehicle registration and title fees, and license taxes. Registration fees, in part, are distributed to counties based upon the ratio of total number of miles of county roads in each county to the total number of miles of county roads in the state. R.C. 4501.04(D). Registration fees, in part, are distributed to townships in a similar manner. R.C. 4501.04(E). R.C. Chapter 5747 establishes local government funds, from which funds are disbursed based, in part, on relative need.

**{¶ 16}** In short, the provisions of R.C. Chapter 5735 provide only one component of a large and complex funding scheme. It would be unwise for any court to review a single component of such a funding scheme in isolation.

**{¶ 17}** Ultimately, however, the myriad interests of, *e.g.*, large townships vis-a-vis small townships, or large townships vis-a-vis large municipalities, are best served by the balancing process that occurs in the legislative forum of the General Assembly. As we stated in *Cincinnati St. Ry. Co. v. Horstman* (1905), 72 Ohio St. 93, 107-109, 73 N.E. 1075, 1077-1078, in rejecting a claim of a Uniformity Clause violation: "It is *** not within the province of any court to declare void, and annul, a statute by reason of a supposed violation of the principles of justice and common reason, if it be within the bounds of constitutional power. *** The act operates over the whole territory of the state and it does not exclude any individual corporation of the class defined. *** The opinion of a court that the legislation is unwise or unjust cannot be the criterion. *** If the law was imperfect in its operation, or if the classification should be broadened, the remedy *** should be sought through the general assembly."

**{¶ 18}** The lower courts, however, implicitly accepted appellees' argument that Section 26, Article II prohibits the adoption of any statute that contains arbitrary or irrational classifications when posited against the stated purpose of the laws in question. We reject this contention.

**{¶ 19}** It is true that the first paragraph of the syllabus to *State ex rel. Zupancic v. Limbach* (1991), 58 Ohio St.3d 130, 568 N.E.2d 1206, provides: "Pursuant to Section 26, Article II of the Ohio Constitution, a court should inquire into the purpose underlying a statutory classification where such classification causes disparate results, and if the statute achieves a legitimate governmental purpose and operates equally on all persons or entities included within its provisions it shall be deemed constitutional."

**{¶ 20}** In arriving at this conclusion of law, *Zupancic* relied in part on *Miller v. Korns* (1923), 107 Ohio St. 287, 302, 140 N.E. 773, 777, in which this court stated:

"The provision of Section 26, Article II of the Constitution *** does not bar classifications which are neither arbitrary nor unreasonable."  We do not question the validity of this proposition.  However, the statement should not be construed to justify its own converse.   That is, the fact that the Uniformity Clause does not bar classifications which are neither arbitrary nor unreasonable does not necessarily mean that a classification which *is* deemed to be arbitrary or unreasonable, necessarily violates the Uniformity Clause.  This is so because arbitrary classifications violate the Uniformity Clause only where those classifications are contained in a statute first deemed to be special or local as opposed to general.  We recognize that the gasoline tax distribution scheme is neither "special" nor "local," but rather affects every municipality and township in the state.

{¶ 21} Further, acceptance of the contention that the Uniformity Clause bars all legislatively created classifications deemed by the judiciary to be arbitrary would improperly and unnecessarily expand the scope of that constitutional provision.  Traditionally, and more appropriately, it is equal protection analysis, rather than Uniformity Clause analysis, which mandates inquiry into whether legislatively created classifications of similarly situated persons bear a rational relationship to legitimate governmental purposes.

{¶ 22} The Ohio Constitution *does* provide protection analogous to that provided by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  However, that protection is provided not by the Uniformity Clause of Section 26, Article I, but rather by Section 2, Article I of the Ohio Constitution, which provides:   "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary ***."

{¶ 23} As early as 1895 this court recognized the functional equivalence of the Equal Protection Clause in the United States Constitution and Section 2, Article I of the Ohio Constitution, while rejecting the contention that the Uniformity Clause

provides a guarantee of equal protection. In *State ex rel. Schwartz v. Ferris* (1895), 53 Ohio St. 314, 336, 41 N.E. 579, 583, the court stated, "[Section 26, Article II] is not intended to guarantee the equal protection of all the inhabitants of the state, but only to provide that laws of a general nature shall be in full and equal force *in all parts of the state.* \*\*\*" (Emphasis added.) See, also, *State v. Nelson*, *supra*, at 103, 39 N.E. at 24 (recognizing that the force and scope of the Equal Protection Clause of the Fourteenth Amendment "is very different from section 26 of article II of the Constitution of our own state").

{¶ 24} More recently a distinction between the Uniformity Clause and the "equal protection and benefit" clause of Section 2, Article I was drawn in *State ex rel. Dayton Fraternal Order of Police Lodge No. 44 v. State Emp. Relations Bd.* (1986), 22 Ohio St.3d 1, 22 O.B.R. 1, 488 N.E.2d 181. In that case we recognized that a statute designed to operate exclusively in the city of Dayton violated the Uniformity Clause. The statute was, however, incapable of application to any other city because it was confined to localities which possessed certain characteristics as of a date certain in the past. We *separately* recognized that the challenged statute therein also violated the Equal Protection and Benefit Clause of Section 2, Article I of the Ohio Constitution, which we characterized as the "functional equivalent of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *Id*. at 6, 22 OBR at 5, 488 N.E.2d at 185.

{¶ 25} Subsequent to the *Dayton* case, however, equal protection concepts and uniformity concepts have more and more tended to merge. See *Zupancic*, *supra*; cf. *Put-In-Bay Island Taxing Dist. Auth. v. Colonial, Inc.* (1992), 65 Ohio St.3d 449, 605 N.E.2d 21. This conceptual blurring has led to the instant case, wherein protection against arbitrary classification traditionally deemed provided by the Equal Protection and Benefit Clause of Section 2, Article I of the Ohio Constitution was wholly supplanted by the Uniformity Clause of Section 26, Article II. But in so doing, courts unfortunately may fail to undergo a complete traditional equal protection analysis.

In the instant case, for example, neither the trial court nor the court of appeals inquired as to whether the gasoline tax statutes at issue affected fundamental interests or created suspect classes; whether the statutory distribution of gasoline tax revenues to cities, townships, and counties is rationally related to a legitimate legislative objective; or whether those political subdivisions, created by the Ohio Constitution itself, should be deemed similarly situated parties. See, generally, *Denicola v. Providence Hosp.* (1979), 57 Oho St.2d 115, 119, 11 O.O.3d 290, 293, 387 N.E. 2d 231, 234.

{¶ 26} We hold that R.C. 5735.23(C) and 5735.27, which establish formulas by which motor vehicle tax revenues are allocated and distributed to municipalities, counties, and townships, do not violate the Uniformity Clause of Section 26, Article II of the Ohio Constitution. Appellees have failed to file a cross-appeal in this court, nor have they asserted in their brief that the statutory gasoline tax distribution scheme deprived them of protections guaranteed by the Due Process and Equal Protection Clauses of the Ohio and United States Constitutions. We therefore find error, if any, in the lower court's disposition of these issues to have been waived. See R.C. 2505.22*; Morgan v. Cincinnati* (1986), 25 Ohio St.3d 285, 25 OBR 337, 496 N.E.2d 468.

{¶ 27} The judgment of the court of appeals is reversed.

*Judgment reversed.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

————————————