JOURNAL ENTRY AND OPINION
{¶ 1} Appellants, Bella Vista Group, Inc., Jimmy and Doris Smith, Larry and Nancy Williams, Carl and Gwendolyn Trapp and Norma Brown, (collectively referred to as the "appellants"), appeal from the decision of the Cuyahoga County Court of Common Pleas which upheld the constitutionality of the City of Strongsville's residential zoning classification and its zoning referendum process. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The appellants filed their complaint against the City of Strongsville ("City") on November 16, 1998 challenging the constitutionality of the City's residential zoning classification (Count I), the constitutionality of the City's rezoning referendum process (Count II) and for damages (Count III). The parties filed cross-motions for summary judgment, responsive briefs and supporting evidence.
 {¶ 3} In its July 28, 2000 journal entry the trial court denied the appellant's motion for summary judgment as to all claims and granted the City's motion for summary judgment on Count II, ruling that the change in zoning would constitute a legislative action and the rezoning referendum requirement was constitutional. The parties then stipulated that the trial court should proceed as the finder of fact and determine the merits of Count I, based upon the briefs and filed joint stipulations of fact. By its October 11, 2000 entry, the trial court denied the appellant's motion for summary judgment as to Counts I and II, dismissed Counts III and IV[1] regarding damages as moot, and granted the City's motion for summary judgment.
 {¶ 4} On November 13, 2000, the appellants filed their appeal of the trial court's denial of their motion for summary judgment and grant of the City's cross-motion for summary judgment. This court found that because the appellants' complaint sought declaratory relief, the trial court's orders were not final and appealable and the trial court was required to declare the rights of the parties. See Bella Vista Group,Inc. v. City (Sept. 6, 2001), Cuyahoga App. No. 78836.
 {¶ 5} Thereafter, on January 7, 2002, the trial court found that the City's residential zoning ordinance and/or classification was constitutional as applied and that the City's Charter provision requiring voter approval for rezoning was constitutional. The appellants then filed the instant appeal of this judgment.
 {¶ 6} The appellants are the individual owners of 17 parcels of land located in the City of Strongsville and the proposed developer of the land. This dispute concerns 17 bowling alley shaped parcels (the "properties") that are currently zoned for single-family residential use. The properties front on Whitney Road between Pearl Road and Interstate 71. The properties currently contain occupied single-family residential homes, save one vacant wooded lot. The owners of the properties entered into option contracts with the developer, Bella Vista Group, Inc. ("Bella Vista"), for the sale of the properties contingent upon the successful rezoning to general business/commercial use. It is Bella Vista's intention to develop a retail shopping center on the properties.
 {¶ 7} Bella Vista has filed three separate rezoning applications with the City. Bella Vista submitted its first rezoning application on May 9, 1997 which was approved by the City's planning commission and by the city council for placement on the November 1997 general election ballot. The rezoning issue was approved by a majority of the voters city-wide but was defeated by a majority vote in Ward 1, the ward in which the properties are situated. Bella Vista amended and resubmitted a second rezoning application on December 9, 1997, and a third rezoning application on May 13, 1998, both of which were approved by the planning commission but rejected by the city council. Neither of the rezoning applications were placed on the City's general election ballot.
 {¶ 8} The appellants' first assignment of error submitted for our review is as follows:
 {¶ 9} The trial court erred in determining that the City's rejection of Appellants' rezoning application was reasonable, substantially advanced a legitimate governmental interest and was therefore constitutional.
 {¶ 10} We review the trial court's judgment to determine whether it was supported by competent and credible evidence. Shemo v. MayfieldHts. (2000), 88 Ohio St.3d 7, 10. Judgments that are supported by some competent, credible evidence going to the essential elements of the case will not be reversed on appeal as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. The standard governing our review of the constitutionality of the City's residential zoning ordinance is set forth in Goldberg Co., Inc. v. Richmond Hts. City Council (1998),81 Ohio St.3d 207, 214, as follows:
 {¶ 11} "[A] zoning regulation is presumed to be constitutional unless determined by a court to be clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community. The burden of proof remains with the party challenging an ordinance's constitutionality and the standard of proof remains `beyond fair debate.'"
 {¶ 12} Our review begins with the presumption that the City's zoning ordinance is constitutional. Cent. Motors Corp. v. Pepper Pike
(1995), 73 Ohio St.3d 581, 583-584. We also recognize that "a municipality may properly exercise its zoning authority to preserve the character of designated areas in order to promote the overall quality of life within the City's boundaries." Id. at 585.
 {¶ 13} Thus the question before this court is whether the appellants have proved beyond a fair debate that the residential zoning ordinance as applied herein was clearly arbitrary and unreasonable and had no substantial relation to the public health, safety, morals or general welfare of the City.
 {¶ 14} The courts are limited in that "[t]he legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations, and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable. Even though the court, on the facts presented, might decide otherwise than did council, so long as the matter is reasonably debatable, the court has no authority to interfere. The power of a municipality to establish zones, to classify property, to control traffic and to determine land-use policy is a legislative function which will not be interfered with by the courts unless such power is exercised in such an arbitrary, confiscatory or unreasonable manner as to be in violation of constitutional guaranties." Willott v. Beachwood (1964),175 Ohio St. 557, 560.
 {¶ 15} The zoning ordinance at issue, Article VIII, Section 6 of City's Charter, mandates that a zoning classification cannot be changed from single-family residential to any other classification unless the change has been adopted in accordance with the legislative procedures approved by a majority of the electors in the City and a majority of the electors in the ward in which the property is located.
 {¶ 16} While the appellants describe the properties at issue as an island surrounded by a sea of highways and commercial development, this picture is incomplete. The properties include 17 wooded lots currently occupied by residential homes on a total of approximately 30 acres. Neighborhoods of occupied single-family residential dwellings lie to the east and occupied multi-family dwellings are immediately south of the properties at issue. Although there is commercial development to the north of the properties and to the west along Pearl Road, the area just west of Pearl Road is primarily composed of single-family residential dwellings.
 {¶ 17} Topographical maps demonstrate that there is a 13-foot embankment between the wooded northern boundaries of the properties and the finished floor elevation of the Wal-Mart store. Most of the parcels at issue are over 800 feet deep and the dense vegetation on the properties blocks the view of the commercial development to the north.
 {¶ 18} The appellants argue that, (1) the city council approved the first rezoning application which eliminated the possibility that the City had a governmental interest in retaining the residential nature of the properties; (2) the City has recommended that a portion of the property be rezoned for commercial use in its own studies contemplating commercial development; (3) it is unconstitutional to deny the rezoning of property where the character of the neighborhood has dramatically changed, citing commercial use, increased traffic and crime.
 {¶ 19} Our review of the evidence reveals that the City has discussed the redevelopment and revitalization of the corner of Whitney and Pearl Roads. However, rezoning has not been presented for a vote and, in any event, the proposed rezoning would only affect a small wedge of the properties (4 of the 17 parcels) at issue herein.[2] This does not obviate the City's interest in maintaining the nature of that area as residential for the purposes of continuity and as a buffer to the commercial area to the north and along Pearl Road. Further, the city council is not obligated to place each and every rezoning application on the general election ballot and may vote against its placement before the electorate.
 {¶ 20} In support of the contention that the neighborhood has dramatically changed, the appellants offered the expert testimony of architect and land use planner, Richard Kraly. Kraly determined that single-family residential zoning was inappropriate for the properties as the area lacks residential neighborhood qualities. In support of this proposition, Kraly states that children are unable to play or ride their bicycles in the street because they are faced with the perils of traffic. However, this is illogical and would be the case in any residential neighborhood.
 {¶ 21} The appellants rely on a string of cases in support of their contention that the nature of the neighborhood has dramatically changed and that it is unconstitutional to deny the rezoning of the properties.[3] However, we find that each of these cases is distinguishable on its facts because the properties mostly consisted of 1 to 3 parcels of land which were effectively surrounded by non residential uses. As stated, the properties at issue herein consist of 17 parcels on approximately 30 acres of wooded land with residential uses to both the south and east.
 {¶ 22} In fact, the appellants cite only two zoning changes in the vicinity of the properties which permitted the construction of additional apartment complexes to the south, and the construction of the Wal-Mart, Builders Square and Salvation Army Thrift Store to the north of the properties. We note that there have historically been business along Pearl Road and at the corner of Whitney and Pearl Roads. Without evidence to the contrary, we presume that the Ohio Turnpike, Interstate 71, Pearl, and Whitney Roads have all been in the vicinity of the properties from the date the appellants' purchased the properties.[4]
 {¶ 23} The appellants contend that commercial use is the highest and best use of the properties. However, the law in Ohio is clear that, "[a] landowner does not have a right to have his land zoned for its most advantageous economic use; the mere fact that the property would be substantially more valuable if used an alternate way is, in itself, insufficient to invalidate an existing zoning ordinance." Smythe v.Butler Twp. (1993), 85 Ohio App.3d 616, 621.
 {¶ 24} The City argues that the residential zoning ordinance advances two legitimate governmental interests: (1) to maintain continuity; and (2) to maintain the balance among the various zoning classifications in the City. The City argues that the properties have been zoned single-family residential and that this portion of Whitney Road is the primary means of ingress and egress to the predominantly residential northeast section of the City and is immediately adjacent to multi-family residential housing.
 {¶ 25} The City offered the expert testimony of Robert Hill, a professional city planner, who opined that the wooded north-end of the properties are a uniquely appropriate borderline between the land used for business use and the land zoned for residential uses to the south and east. Hill also stated that the property has been zoned for residential use for over 40 years and that the area is the primary ingress and egress for the predominantly residential northeast section of the City. Therefore, the residential use on the properties maintains the continuity of the residential character of this section of the City. Hill opined while other zoning classifications may be appropriate to one degree or another, the residential zoning "comports with generally-accepted land use and community planning principles and bears a substantial relationship to the public health, safety, morals and/or general welfare."
 {¶ 26} In Hill's opinion, there is no compelling reason to change the residential zoning pattern, but that if a change were considered it would be logical to develop single family cluster homes. There is no evidence that the current single-family residential use is unreasonable.
 {¶ 27} The City argues that the current zoning classification confines the general business activities to areas which are largely out of sight of the inhabited single-family and multi-family residential dwellings along Whitney Road, including the properties at issue. We recognize that preserving the aesthetics of a community is a legitimate government interest and may be considered when enacting zoning legislation. Hudson v. Albrecht (1984), 90 Ohio St.3d 69, syllabus.
 {¶ 28} Hill also testified that rezoning for commercial use would upset the existing balance between residential and business use in the City. The 1996 Strongsville Comprehensive Plan Business Supplement determined that there is already an excess of 170 acres of land zoned for business use.
 {¶ 29} The City offered evidence of the market value of the homes as determined by the Cuyahoga County Auditor which demonstrated the value of the properties had consistently increased. The properties, including the land and occupied dwellings, range in market value from $41,500 (for the only vacant wooded lot) to $215,600. The appellants do not cite any evidence that they have been unable to sell their homes for fair market value despite their claim.
 {¶ 30} We find that the appellants have failed to prove that the City's zoning ordinance does not advance the City's legitimate government interest in maintaining the residential character of the properties and the balance in the extended community. See Central Motors Corp. v. Cityof Pepper Pike (1995), 73 Ohio St.3d 581. The evidence provided by the appellants does not overcome the strong presumption that the zoning ordinance is constitutional and we do not substitute our judgment for that of the City's legislative function where the appellants' constitutional guaranties have not been violated.
 {¶ 31} After a careful review, we find that there was competent, credible evidence to support the trial court's judgment and conclude that the appellants' failed to demonstrate beyond a fair debate that the City's residential zoning ordinance as applied to the appellants was arbitrary or unreasonable and that it did not substantially relate to the health, safety and general welfare of the City of Strongsville. Accordingly, the appellants' first assignment of error is overruled.
 {¶ 32} The appellants' second assignment of error is as follows:
 {¶ 33} "II. The trial court erred in determining that the City's rezoning referendum procedure is constitutional."
 {¶ 34} The appellants challenge Article VIII, Section 6, of the City's Charter as being unconstitutional as applied because it provides for a ward veto. Specifically, in order to change a property zoned for residential use to any other use, the referendum provision requires approval by a majority vote in city-wide and a majority vote in the ward in which the property is situated. The appellants contend that this provision is in conflict with the general laws of the State of Ohio because it invites an arbitrary and capricious usurpation of municipal authority by the electorate.
 {¶ 35} The evidence reveals that the appellants' rezoning application on the November 1997 general election ballot was approved by a slight majority in the city-wide electorate (6,474 votes to 6,124 votes) but was defeated by a slight majority of the voters in Ward 1 (1,807 votes to 1,356 votes). Those persons who are primarily affected by the rezoning of the property from residential use to commercial use are the voters who reside in Ward 1, not the city-wide electorate. A process which gives these voters such deciding weight in regard to the rezoning of the property is not unreasonable in and of itself.
 {¶ 36} The appellants do not cite any legal authority upon which they base their challenge of the City's referendum process. We are not presented with the same circumstances as in Rispo Realty Dev. Co. v.Parma (1990), 55 Ohio St.3d 101, which concerned a noncharter municipality's zoning ordinance that was found to be in direct conflict with a state statute. "A noncharter municipality may not pass a zoning ordinance that contains automatic referendum and ward veto provisions, since those provisions are in direct conflict with R.C. 713.12 and 731.29."Rispo Realty Dev. Co. v. Parma, supra, at syllabus. The City of Strongsville is a charter municipality and we find no conflict herein.
 {¶ 37} Accordingly, the appellants' second assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellees recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., AND JAMES D. SWEENEY, J., CONCUR.
[1] Although the appellants' complaint does not contain a separately captioned Count IV, the trial court divided its request for damages for both Bella Vista Group, Inc. and the home owners.
[2] This corner is currently occupied by a beverage store and several motels.
[3] Standard Oil Co. v. City of Warrensville Hts (1976),48 Ohio App.2d 1; Central Motors Corp. v. City of Pepper Pike (1979),63 Ohio App.2d 34; Daus v. City of Pepper Pike (Jun. 7., 1984), Cuyahoga App. No. 47411; Tyler v. City of North Royalton (Oct. 27, 1983), Cuyahoga App. No. 46316, and Mayfield-Dorsch v. City of South Euclid (1981),68 Ohio St.2d 156.
[4] The evidence does not reveal the dates on which the appellant home owners purchased their respective parcels.