[Cite as *FAM 13375, Inc. v. Brook Park*, 2025-Ohio-4667.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

FAM 13375, INC.,                                  :

    Plaintiff-Appellant,                 :

                                    No. 114490

    v.                                          :

CITY OF BROOK PARK, ET AL.,          :

    Defendants-Appellees.            :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART AND VACATED
                    IN PART
**RELEASED AND JOURNALIZED:**  October 9, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-103302

---

### *Appearances:*

Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and
Komlavi Atsou, *for appellant.*

Michael L. Morgan, City of Brook park, Board of Zoning
Appeals, *for appellees.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} FAM 13375, Inc. ("FAM 13375") appeals from the trial court's journal entry declaring Brook Park Cod.Ord. 1121.23(c)(1)(D)(1)(d)(1) (the "Ordinance") constitutional and granting the City of Brook Park and Brook Park's Building Commissioner Jason Monaco's ("Monaco") (collectively "Brook Park") motion to

dismiss.[1] For the following reasons, we affirm the trial court's judgment in part and vacate the trial court's judgment in part.

## I. Facts and Procedural History

{¶ 2} In December 2023, FAM 13375 submitted an application for an occupancy certificate to Brook Park concerning real property located at 13375 Snow Road. FAM 13375's intent was to open a retail store (the "Store") and sell various items including nicotine products and alternative nicotine products, such as vape juice and other electronic smoking devices and paraphernalia ("Vape Products"). FAM 13375's intent was also that the Store would sell other products commonly sold at convenience stores, such as beverages, snacks and lottery tickets.

{¶ 3} As part of the occupancy certificate procedure, FAM 13375 obtained building permits from Brook Park and vendor licenses from Brook Park and Cuyahoga County. The Cuyahoga County vendor license concerning the Store lists the "Type of Business" as "Convenience Stores" and the name of the business as "Grab & Go Smoke Market." On January 2, 2024, Monaco informed FAM 13375 that Brook Park had "a moratorium on" what it referred to as "vape shops" or "smoke shops" after noticing the "Grab & Go Smoke Market" sign on the door of the Store. FAM 13375 ultimately changed the name of the Store to eliminate the word "smoke."

---

[1] The trial court's journal entry refers to the Brook Park ordinance at issue as 1121.23(C)(L)(D)(L), 1121.23(C)(1)(D)(1) and 1121.23 (C)(L)(D)(1). Our review of Brook Park's Codified Ordinances shows that there is no Section "L" within 1121.23. Furthermore, our review of the Ordinance shows that the section at issue in this appeal is 1121.23(c)(1)(D)(1)(d)(1), which governs Vape Shops as a permitted use of "Retail sales in buildings" in a U-3A Business District. Thus, the "Ordinance" in this opinion refers to Section 1121.23(c)(1)(D)(1)(d)(1).

The Store passed various building code inspections in an attempt to obtain the occupancy certificate.

{¶ 4} On April 2, 2024, Brook Park amended the Ordinance to add a "Vape shop/Smoke shop" ("Vape Shop") category to the permitted uses of buildings in the city. The amendment defined a Vape Shop as "[a]ny business whose principal product line for retail sale is" Vape Products. The amended Ordinance also defined "principal product line" as Vape Products constituting "at least twenty-five percent . . . of the businesses' retail space."

{¶ 5} On May 7, 2024, Brook Park classified the Store as a Vape Shop and sent the following notice to FAM 13375:

> In regards to your smoke shop, Ordinance 1121.23(c)(1)(D)(1) considers any business whose principal product line is alternative nicotine, smoking paraphernalia, vape juice or any combination of these in excess of 25% of the retail space to be a smoke shop. In order to be considered a convenience store you would need to consolidate your inventory of the products mentioned above to less than 25% of the retail space.

{¶ 6} On May 16, 2024, Monaco made a site visit to the Store to conduct a zoning inspection. According to Monaco, he "looked at the square footage of the space, linear feet, and . . . calculated that . . . more than 25 percent was taken up with smoke shop and vape shop product."

{¶ 7} On May 21, 2024, Brook Park denied FAM 13375's application for an occupancy certificate, stating that the "proposed business does not comply with Ordinance 1121.23(c)(1)(D)(1)" because it was "deemed a [Vape Shop] based on 25% of retail space is dedicated to the sale of alternative nicotine products, smoking

paraphernalia, and vape juice." According to Brook Park, a Vape Shop "would not be allowed under the Ordinance as the Ordinance limits the number of [Vape Shops] in the city and [the] city was already at maximum capacity for those businesses." Brook Park further stated that it "cannot allow the business to open at this time without first obtaining a Conditional Use Permit from the Planning Commission to operate a vape shop/smoke shop . . . ."

{¶ 8} It is undisputed that FAM 13375 did not apply for a conditional use permit. Rather, FAM 13375's position was that the Store is a convenience store and not a Vape Shop. FAM 13375 alleged that the "primary purpose" of this amendment to the Ordinance "was to prevent [FAM 13375] from opening its store in" Brook Park.

{¶ 9} FAM 13375 appealed to the Brook Park Board of Zoning Appeals ("BZA") and, on July 2, 2024, the BZA made the following determination: "Request an appeal to the Building Department's decision to not allow a vape/smoke shop at 13375 Snow Road[,] located in the U3-A3 zoning district [] ordinance 1121.23(C)(1)(D)(1) – Denied." On July 26, 2024, FAM 13375 appealed this administrative decision to the Cuyahoga County Common Pleas Court. *See FAM 13375 Inc. v. Brook Park*, Cuyahoga C.P. No. CV-24-101261 (the "Administrative Appeal").[2]

---

[2] The trial court dismissed the Administrative Appeal. FAM 13375 appealed to this court, which is the subject of a companion appeal in 8th Dist. Cuyahoga No. 114498.

{¶ 10} On September 5, 2024, FAM 13375 filed a verified complaint against Brook Park and Monaco that is the subject of the appeal at hand. The first claim requested a declaratory judgment that the Ordinance is unconstitutional on its face because it conflicts with R.C. 3794.01(I). The second claim requested a declaratory judgment that, if the Ordinance is constitutional, Brook Park "misapplied" the Ordinance to FAM 13375 and the Store. In the third claim, FAM 13375 requested that, via a mandamus action and an injunction, Brook Park and Monaco be ordered to approve the application for occupancy certificate that it submitted in December 2023.

{¶ 11} On the same day that FAM 13375 filed its complaint in this case, it also filed a motion for preliminary injunction and a motion for temporary restraining order. On September 13, 2024, Brook Park filed a motion to dismiss arguing "lack of subject matter jurisdiction due to [FAM 13375's] failure to fully exhaust [its] administrative remedies prior to this filing." On September 19, 2024 and September 24, 2024, the court held hearings on FAM 13375's motion for preliminary injunction and Brook Park's motion to dismiss.

{¶ 12} On September 25, 2024, the court issued a journal entry granting Brook Park's motion to dismiss and denying FAM 13375's motion for preliminary injunction. Specifically, the court found as follows.

{¶ 13} As to the first claim in FAM 13375's complaint, the court stated that it "declines to declare that . . . the Ordinance is invalid due to a conflict with [R.C.] 3794.01(I)." The court further found that "there is no conflict with the State statute

and the Ordinance is constitutional pursuant to the city's home rule powers . . . ." In other words, the court declared that the Ordinance was constitutional, in that it did not conflict with R.C. 3794.01(I).

{¶ 14} Also related to FAM 13375's first claim, the court stated that it "declines to declare that [Brook Park's] decision denying [FAM 13375's] application for the [occupancy certificate] based on . . . the Ordinance was erroneous." The court determined that FAM 13375 "is not entitled to the occupancy certificate sought." In other words, the trial court found that Brook Park did not err by denying FAM 13375 an occupancy certificate for the Store.

{¶ 15} As to FAM 13375's second claim, the trial court found that "the evidence does not support [FAM 13375's] claim that the [Store] complied with [the Ordinance]; the evidence does not support that [Brook Park] misapplied [the Ordinance] to [the Store]; [and FAM 13375] is not entitled to the occupancy certificate requested."

{¶ 16} As to the third and final claim in FAM 13375's complaint, the trial court stated that "based on the evidence, the court declines to compel [Brook Park and Monaco] to issue the occupancy certificate."

{¶ 17} FAM 13375 appeals raising the following assignments of error for our review:

> I.     The trial court erred when it ruled that city of Brook Park's Codified Ordinance Section 1121.23(c)(1)(D)(1) is valid, constitutional, and not preempted by state law, even though the Ordinance is an exercise of police power that conflicts with a general state law, R.C. 3794.01(I).

II.     Assuming the Ordinance is valid or constitutional, the trial court erred when it ruled that Brook Park's unconstitutional retroactive application of the ordinance to FAM's application for [an occupancy certificate] — which was submitted before Brook Park enacted the Ordinance — was proper.

III.    The trial court erred when it granted Brook Park's and Jason Monaco's Motion to Dismiss FAM's verified complaint in its entirety.

## II. The Law

### A. This Case is Not an Administrative Appeal

{¶ 18} Pursuant to R.C. 2506.01(A), "every final order, adjudication, or decision of any . . . board . . . of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located . . . ." *See also Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177 (2001) ("The right to appeal an administrative decision is neither inherent nor inalienable; to the contrary it must be conferred by statute."); *Murray Energy Corp. v. Pepper Pike*, 2008-Ohio-2818, ¶ 16 (8th Dist.) (concluding that "the proper remedy" to challenge a board of zoning appeals' decision to grant a variance "was to appeal the administrative decision pursuant to R.C. 2506.01, not seek equitable relief" in the form of an injunction).

{¶ 19} It is undisputed that FAM 13375 challenged the BZA's decision to deny the Store's occupancy certificate via the Administrative Appeal. To the extent that FAM 13375 requested a review of the BZA's decision in this case, we find that this issue is the subject of the Administrative Appeal and is not properly before us here. For example, in the second claim of FAM 13375's complaint, it requested that the

court "declare" that the BZA's decision denying FAM 13375 an occupancy certificate was erroneous. Essentially, FAM 13375 requested that the court use a declaratory-judgment action to rule that FAM 13375 succeeds on the merits of its case. This is so contrary to the purpose of a declaratory-judgment action that we could not find a case with a similar argument. The proper use of a declaratory-judgment action will be discussed in detail in subsequent sections of this opinion.

{¶ 20} Accordingly, to the extent that the court made any findings concerning the merits of the BZA's decision, i.e., whether the decision was erroneous, whether FAM 13375 was entitled to the occupancy certificate, whether FAM 13375 complied with the Ordinance, whether Brook Park misapplied the Ordinance and whether to compel Brook Park to issue the occupancy certificate, these findings are vacated because they are not authorized under a declaratory-judgment action and are the subject of the Administrative Appeal.

**B. Declaratory Judgment Standard of Review**

{¶ 21} Pursuant to R.C. 2721.03, "any person whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status, or other legal relations under it." Furthermore, pursuant to R.C. 2721.02(A), the "declaration may be either affirmative or negative in form and effect. The declaration has the effect of a final judgment or decree." "[O]nce a trial court determines that a matter is appropriate for declaratory

judgment, its holdings regarding questions of law are reviewed on a de novo basis."
*Arnott v. Arnott*, 2012-Ohio-3208, ¶ 13.

### C. Facial Constitutional Challenge to the Ordinance is Proper in a Declaratory-Judgment Action

{¶ 22} In FAM 13375's first assignment of error, it argues that the Ordinance is unconstitutional on its face because it conflicts with R.C. 3794.01(I).

{¶ 23} In addition to an administrative appeal, a party may file a declaratory-judgment action concerning a facial constitutional challenge to an ordinance. *See Cappas & Kara Invest., Inc. v. Cleveland Bd. of Zoning Appeals*, 2005-Ohio-2735, ¶ 12 (8th Dist.) ("A facial constitutional challenge to a zoning ordinance is improper in the context of an administrative appeal. . . . [T]he proper vehicle for challenging the constitutionality of an ordinance on its face is a declaratory judgment action."). On the other hand, a "challenge to the constitutionality of an ordinance as it is enforced against a particular parcel is properly brought under an administrative appeal." *Martin v. Independence Bd. of Zoning Appeals,* 2003-Ohio-2736, ¶ 9 (8th Dist.). *See also Moore v. Middletown*, 2012-Ohio-3897, ¶ 35 (recognizing that either an administrative appeal or a declaratory judgment action "is an appropriate means to challenge a zoning resolution").

{¶ 24} Accordingly, we focus our analysis on FAM 13375's argument that the Ordinance is unconstitutional on its face because that is the only constitutional challenge that is authorized in this declaratory-judgment action.

{¶ 25} In this case, FAM 13375 argues that the Ordinance is unconstitutional on its face under the Home Rule Amendment in Section 3, Article XVIII of the Ohio Constitution, which states that "municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." In *Mendenhall v. Akron*, 2008-Ohio-270, ¶ 17, the Ohio Supreme Court set forth the test courts use when analyzing the constitutionality of an ordinance under the Home Rule Amendment. A state statute takes precedence over a local ordinance when "(1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute." *Id.*

**1. Brook Park Codified Ordinance 1121.23(c)(1)(D)(1)(d)(1)**

{¶ 26} As stated previously, the Ordinance defines a Vape Shop for the purposes of Brook Park's permitted uses of buildings in the "U-3A Business District" as "[a]ny business whose principal product line for retail sale" is Vape Products that "constitute at least twenty-five percent . . . of the businesses' retail space."

**2. R.C. 3794.01(I)**

{¶ 27} R.C. Ch. 3794 et seq., also known as the "SmokeFree Workplace Act," took effect in 2006. R.C. 3794.01 provides definitions for the SmokeFree Workplace Act, and Section (I) defines a "Retail vapor store" as follows: "a retail establishment that derives more than eighty percent of its gross revenue from the sale of" Vape Products "and for which the sale of other products is merely incidental."

{¶ 28} R.C. 3794.03 governs "[a]reas where smoking is not regulated" by R.C. Ch. 3794, and Section (I) lists a "retail vapor store" as being unregulated by the statute "insofar as the provisions of this chapter apply to smoking via vapor products and electronic smoking devices." The statute makes it clear that the "provisions of this chapter apply to retail vapor stores with regard to all other forms of smoking."

### 3. Analysis

{¶ 29} We analyze FAM 13375's argument under the three-part test used to evaluate claims that a city has exceeded its powers under the Home Rule Amendment as stated in *Mendenhall v. Akron*, 2008-Ohio-270.

### a. Police Power

{¶ 30} First, we must determine whether the Ordinance is an exercise of police power rather than an exercise of local self-government. Police-power ordinances are enacted to "protect the public health, safety, or morals, or the general welfare of the public." *Marich v. Bob Bennett Constr. Co.*, 2008-Ohio-92, ¶ 11. In *Rispo Realty & Dev. Co. v. Parma*, 55 Ohio St.3d 101, 103 (1990), the Ohio Supreme Court stated that "Ohio has long recognized that the enactment of zoning laws by a municipality is an exercise of its police power as described under Section 3, Article XVIII of the Ohio Constitution." Additionally, the April 2, 2024 amendment to the Ordinance, which added Vape Shop to the list of permitted uses for retail stores in Brook Park, specifically states that "[t]his Ordinance is hereby declared to be an emergency measure immediately necessary for the preservation of public peace, health, safety and welfare of" Brook Park.

{¶ 31} Accordingly, the Ordinance is an exercise of police power.

## b. General Law

{¶ 32} Second, we must determine whether R.C. 3794.01 is a general law. In *Canton v. State*, 2002-Ohio-2005, ¶ 21, the Ohio Supreme Court held that

> to constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.

{¶ 33} In its appellate brief, FAM 13375 cites one case for the proposition that R.C. 3794.01 is a general law. In *Automatic Refreshment Serv., Inc. v. Cincinnati*, 92 Ohio App.3d 284, 288-289 (1st Dist. 1993), the First District Court of Appeals summarily determined, without analysis, that R.C. 2927.02 is a general law. *Automatic Refreshment's* entire excerpt concerning whether the state statute at issue is a general law follows:

> A general law is one which promotes statewide uniformity. . . . A statute which sets forth uniform police or sanitary regulations statewide is a general law for the purposes of Section 3, Article XVIII of the Ohio Constitution . . . . We hold that R.C. 2927.02 establishes a statewide regulatory scheme for the vending of tobacco products and is, therefore, a general law of the state.

*Id.*

{¶ 34} Similar to FAM 13375, Brook Park cites law to set forth the *Mendenhall* test as well as two cases from 1924 and 1958 respectively to support the basic proposition that "a general law operates uniformly with respect to every person and locality to which it relates." *See State ex rel. Stanton v. Powell*, 109 Ohio St. 383

(1924); *Beachwood v. Cuyahoga Cty. Bd. of Elections*, 167 Ohio St. 369 (1958). In short, neither party cited any relevant law regarding whether R.C. 3794.01 is a general law for the purpose of the home-rule amendment analysis.

{¶ 35} Our research reveals that the Ohio Supreme Court conducted a detailed analysis of what constitutes a general law in *Cleveland v. State*, 2010-Ohio-6318. "'Once a matter has become of such general interest that it is necessary to make it subject to statewide control as to require uniform statewide regulation, the municipality can no longer legislate in the field so as to conflict with the state.'" *Id.* at ¶ 12. The *Cleveland* Court applied the four-part test from *Canton*, as we must, to determine that R.C. 9.68, which governs the "uniform laws throughout the state regulating . . . firearms," was a general law.

{¶ 36} As to the first *Canton* prong, the *Cleveland* Court determined that "R.C. 9.68 is part of a comprehensive statewide legislative enactment," noting that "[t]here are a host of state and federal laws regulating firearms." *Id.* at ¶ 17. The *Cleveland* Court further noted that a "comprehensive enactment need not regulate every aspect of disputed conduct, nor must it regulate that conduct in a particularly invasive fashion." *Id.* at ¶ 21.

{¶ 37} As to the second *Canton* prong, the *Cleveland* Court found that R.C. 9.68 applies to all parts of the state and operates uniformly. *Id.* at ¶ 26.

{¶ 38} Turning to the third prong of the *Canton* test, the *Cleveland* Court found that R.C. 9.68 and "Ohio's statutory scheme for regulating firearms" establish police regulations rather than limit municipal legislative power. *Id.* at ¶ 28.

**{¶ 39}** As to the fourth prong of the *Canton* test, the *Cleveland* Court found that the proper analysis includes considering "Ohio's comprehensive collection of firearm laws" rather than "considering R.C. 9.68 in isolation . . . ." *Id.* at ¶ 29. "Thus, when we consider the entire legislative scheme, as we must, we conclude that when interpreted as part of a whole, R.C. 9.68 applies to all citizens generally." *Id.*

### i. Applying the *Canton* Test to this Case

**{¶ 40}** In *Wymsylo v. Bartec, Inc.*, 2012-Ohio-2187, the Ohio Supreme Court held that R.C. Ch. 3794 et seq. "is a valid exercise of the state's police power and does not constitute a taking." *Id.* at ¶ 13. The *Wymsylo* Court noted that R.C. Ch. 3794 was "passed by Ohio voters" and "is in the best interests of public health . . . ." *Id.* at ¶ 14. The Court further stated that the act was designed to be "a uniform statewide minimum standard to protect workers and the public from the health hazards associated with exposure to secondhand smoke from tobacco." *Id.* The statutory scheme applies to "[p]roprietors of public places and places of employment . . . ." *Id.* at ¶ 15.

**{¶ 41}** In looking at R.C. Ch. 3794 as a whole and the Ohio Supreme Court's guidance in *Wymsylo*, we conclude that R.C. Ch. 3794 is a comprehensive act with uniform application within the state. The *Wymsylo* Court determined for us that the statute is a valid exercise of a police regulation. *Wymsylo* at ¶ 13. Furthermore, the Chapter imposes a rule of conduct upon citizens generally.

**{¶ 42}** Accordingly, we find that R.C. 3794.01 is a general law.

### c. Alleged Conflict

{¶ 43} Third, we must determine whether the Ordinance conflicts with the statute. "It has long been established that '[i]n determining whether an ordinance is in "conflict" with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.'" *Cincinnati v. Baskin*, 2006-Ohio-6422, ¶ 19, quoting *Struthers v. Sokol*, 108 Ohio St. 263 (1923), paragraph two of the syllabus.

{¶ 44} A cursory reading of R.C. 3794.01(I) and the Ordinance shows that the two laws do not conflict.

{¶ 45} The Ordinance states that retails shops within Brook Park "whose principal product line" is Vape Products constituting "at least twenty-five percent . . . of the businesses' retail space" are considered Vape Shops. This definition is used to determine local zoning issues. The statute, on the other hand, defines a "retail vapor store" throughout the state as "a retail establishment that derives more than eighty percent of its gross revenue from the sale of" Vape Products. This statutory definition is used for the purpose of determining whether people can smoke inside a store that sells Vape Products.

{¶ 46} The statute uniformly regulates where people can and cannot smoke throughout the state. The Ordinance, on the other hand, regulates permitted uses of retail buildings for zoning purposes within Brook Park. In other words, one law does not permit what the other law forbids. Accordingly, there is no violation of the Home Rule Amendment in Section 3, Article XVIII of the Ohio Constitution.

{¶ 47} FAM 13375's first assignment of error is overruled.

**D. The Remainder of FAM 13375's Appeal**

{¶ 48} In FAM 13375's second assignment of error, it argues that "the trial court erred when it ruled that Brook Park's . . . application of the ordinance to FAM's application for [an occupancy certificate] was proper." This argument concerns the merits of the Administrative Appeal, which, as discussed previously in this opinion, is not a proper issue to decide in this declaratory-judgment action. Accordingly, FAM 13375's second assignment of error is overruled.

{¶ 49} In FAM 13375's third assignment of error, it argues that the trial court erred when it granted Brook Park's motion to dismiss. This assignment of error has merit in part.

{¶ 50} Under the first claim in FAM 13375's complaint, the trial court declared that the Ordinance was constitutional insomuch as it did not conflict with R.C. 3794.01(I). The trial court issued a declaratory judgment even though it declared the opposite of what FAM 13375 requested it to declare. But the trial court also granted Brook Park's motion to dismiss this claim. These two actions cannot coexist. *See, e.g., Barker v. Emergency Professional Servs.*, 2014-Ohio-1368, ¶ 18 (11th Dist.) (holding that a journal entry was "internally and inherently inconsistent" because a motion to dismiss and a motion for summary judgment "are two mutually exclusive motions: the granting of the motion to dismiss renders the motion for summary judgment moot").

{¶ 51} In claims two and three, FAM 13375 once again went beyond the scope of a declaratory-judgment action and asked the court to essentially rule on the same merits that it challenged in the Administrative Appeal. Accordingly, we find that the court erred by dismissing FAM 13375's first claim, because it issued a declaratory judgment concerning that claim. Additionally, we find no error in the dismissal of the second and third claims because they are the subject of the Administrative Appeal.

{¶ 52} FAM 13375's third assignment of error is sustained in part and overruled in part.

{¶ 53} Judgment affirmed to the extent that, under FAM 13375's first claim, it declared the Ordinance constitutional in that it does not conflict with R.C. 3794.01(I). Judgment affirmed to the extent it granted Brook Park's motion to dismiss the remainder of FAM 13375's claims. The portion of the journal entry denying FAM 13375's motion for preliminary injunction is not being challenged on appeal and is unaffected by this opinion. The remainder of the trial court's September 25, 2024 journal entry is vacated.

It is ordered that appellees and appellant equally share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

MICHAEL JOHN RYAN, J., and
DEENA R. CALABRESE, J., CONCUR